## TOIBB v. RADLOFF

No. 90–368.   Argued April 22, 1991—Decided June 13, 1991

*Peter M. Lieb* argued the cause for petitioner.   With him on the briefs were *Timothy B. Dyk* and *Jonathan W. Belsky*.

*Stephen J. Marzen* argued the cause for the United States, as respondent under this Court's Rule 12.4, in support of petitioner.   With him on the brief were *Solicitor General Starr, Assistant Attorney General Gerson, Deputy Solicitor*

General Roberts, William Kanter, Bruce G. Forrest, and Martha Davis.

*James Hamilton*, by invitation of the Court, 498 U. S. 1065, argued the cause and filed a brief as *amicus curiae* in support of the judgment below.

JUSTICE BLACKMUN delivered the opinion of the Court.

In this case we must decide whether an individual debtor not engaged in business is eligible to reorganize under Chapter 11 of the Bankruptcy Code, 11 U. S. C. § 1101 *et seq.*

I

From March 1983 until April 1985, petitioner Sheldon Baruch Toibb, a former staff attorney with the Federal Energy Regulatory Commission, was employed as a consultant by Independence Electric Corporation (IEC), a company he and two others organized to produce and market electric power. Petitioner owns 24 percent of the company's shares. After IEC terminated his employment, petitioner was unable to find work as a consultant in the energy field; he has been largely supported by his family and friends since that time.

On November 18, 1986, petitioner filed in the United States Bankruptcy Court for the Eastern District of Missouri a voluntary petition for relief under Chapter 7 of the Code, 11 U. S. C. § 701 *et seq.* The Schedule of Assets and Liabilities accompanying petitioner's filing disclosed no secured debts, a disputed federal tax priority claim of $11,000, and unsecured debts of $170,605.[1] Petitioner listed as nonexempt assets his IEC shares and a possible claim against his former business associates. He stated that the market value of each of these assets was unknown.

On August 6, 1987, the Chapter 7 trustee appointed to administer petitioner's estate notified the creditors that the

---

[1] Because petitioner's unsecured debts exceeded $100,000 and he had no regular income, he was ineligible to proceed under Chapter 13 of the Code, 11 U. S. C. § 1301 *et seq.* See § 109(e).

Board of Directors of IEC had offered to purchase petitioner's IEC shares for $25,000. When petitioner became aware that this stock had such value, he decided to avoid its liquidation by moving to convert his Chapter 7 case to one under the reorganization provisions of Chapter 11.

The Bankruptcy Court granted petitioner's conversion motion, App. 21, and on February 1, 1988, petitioner filed a plan of reorganization. *Id.*, at 70. Under the plan, petitioner proposed to pay his unsecured creditors $25,000 less administrative expenses and priority tax claims, a proposal that would result in a payment of approximately 11 cents on the dollar. He further proposed to pay the unsecured creditors, for a period of six years, 50 percent of any dividends from IEC or of any proceeds from the sale of the IEC stock, up to full payment of the debts.

On March 8, 1988, the Bankruptcy Court on its own motion ordered petitioner to show cause why his petition should not be dismissed because petitioner was not engaged in business and, therefore, did not qualify as a Chapter 11 debtor. *Id.*, at 121. At the ensuing hearing, petitioner unsuccessfully attempted to demonstrate that he had a business to reorganize.[2] Petitioner also argued that Chapter 11 should be available to an individual debtor not engaged in an ongoing business. On August 1, the Bankruptcy Court ruled that, under the authority of *Wamsganz* v. *Boatmen's Bank of De Soto*, 804 F. 2d 503 (CA8 1986), petitioner failed to qualify for relief under Chapter 11. App. to Pet. for Cert. A–17 and A–19.

The United States District Court for the Eastern District of Missouri, also relying on *Wamsganz*, upheld the Bankruptcy Court's dismissal of petitioner's Chapter 11 case. App. to Pet. for Cert. A–8 and A–9. The United States Court of Appeals for the Eighth Circuit affirmed, holding that the Bankruptcy Court had the authority to dismiss the

---

[2] Petitioner does not seek further review of the question whether he is engaged in an ongoing business.

proceeding *sua sponte*, and that the Circuit's earlier *Wamsganz* decision was controlling. *In re Toibb*, 902 F. 2d 14 (1990).[3] Because the Court of Appeals' ruling that an individual nonbusiness debtor may not reorganize under Chapter 11 clearly conflicted with the holding of the Court of Appeals for the Eleventh Circuit in *In re Moog*, 774 F. 2d 1073 (1985), we granted certiorari to resolve the conflict.[4] 498 U. S. 1060 (1991).

## II

### A

In our view, the plain language of the Bankruptcy Code disposes of the question before us. Section 109, 11 U. S. C. § 109, defines who may be a debtor under the various chapters of the Code. Section 109(d) provides: "Only a person that may be a debtor under chapter 7 of this title, except a stockbroker or a commodity broker, and a railroad may be a debtor under chapter 11 of this title." Section 109(b) states: "A person may be a debtor under chapter 7 of this title only if such person is not—(1) a railroad; (2) a domestic insurance company, bank, . . . ; or (3) a foreign insurance company, bank, . . . engaged in such business in the United States."

---

[3] The Eighth Circuit also agreed with what it regarded as the supporting precedent of *In re Little Creek Development Co.*, 779 F. 2d 1068 (CA5 1986), and *In re Winshall Settlor's Trust*, 758 F. 2d 1136 (CA6 1985).

[4] The named respondent, Stuart J. Radloff, was dismissed as Chapter 7 trustee when the Bankruptcy Court converted petitioner's case to one under Chapter 11. Mr. Radloff did not participate in the proceedings before the Court of Appeals and refrained from responding to Mr. Toibb's petition for certiorari filed with this Court. We therefore specifically requested the United States Trustee, see 28 U. S. C. § 581(a)(13), to respond. In doing so, the United States Trustee indicated his agreement with petitioner's position and suggested that, if this Court decided to review the case, it might wish to appoint counsel to defend the Eighth Circuit's judgment. We then invited James Hamilton, Esq., of Washington, D. C., a member of the Bar of this Court, to serve as *amicus curiae* in support of the judgment of the Court of Appeals. 498 U. S. 1065 (1991). Mr. Hamilton accepted this appointment and has well fulfilled this assigned responsibility.

The Code defines "person" as used in Title 11 to "includ[e] [an] individual." § 101(35). Under the express terms of the Code, therefore, petitioner is "a person who may be a debtor under chapter 7" and satisfies the statutory requirements for a Chapter 11 debtor.

The Code contains no ongoing business requirement for reorganization under Chapter 11, and we are loath to infer the exclusion of certain classes of debtors from the protections of Chapter 11, because Congress took care in § 109 to specify who qualifies—and who does not qualify—as a debtor under the various chapters of the Code. Section 109(b) expressly excludes from the coverage of Chapter 7 railroads and various financial and insurance institutions. Only municipalities are eligible for the protection of Chapter 9. § 109(c). Most significantly, § 109(d) makes stockbrokers and commodities brokers ineligible for Chapter 11 relief, but otherwise leaves that Chapter available to any other entity eligible for the protection of Chapter 7. Congress knew how to restrict recourse to the avenues of bankruptcy relief; it did not place Chapter 11 reorganization beyond the reach of a nonbusiness individual debtor.

B

The *amicus curiae* in support of the Court of Appeals' judgment acknowledges that Chapter 11 does not expressly exclude an individual nonbusiness debtor from its reach. He echoes the reasoning of those courts that have engrafted an ongoing-business requirement onto the plain language of § 109(d) and argues that the statute's legislative history and structure make clear that Chapter 11 was intended for business debtors alone. See, *e. g., Wamsganz* v. *Boatmen's Bank of De Soto*, 804 F. 2d, at 505 ("The legislative history of the Bankruptcy Code, taken as a whole, shows that Congress meant for chapter 11 to be available to businesses and persons engaged in business, and not to consumer debtors"). We find these arguments unpersuasive for several reasons.

First, this Court has repeated with some frequency: "Where, as here, the resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear." *Blum* v. *Stenson*, 465 U. S. 886, 896 (1984). The language of § 109 is not unclear. Thus, although a court appropriately may refer to a statute's legislative history to resolve statutory ambiguity, there is no need to do so here.

Second, even were we to consider the sundry legislative comments urged in support of a congressional intent to exclude a nonbusiness debtor from Chapter 11, the scant history on this precise issue does not suggest a "clearly expressed legislative inten[t] . . . contrary . . ." to the plain language of § 109(d). See *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 108 (1980). The *amicus* does point to the following statement in a House Report:

> "Some consumer debtors are unable to avail themselves of the relief provided under chapter 13. For these debtors, straight bankruptcy is the only remedy that will enable them to get out from under the debilitating effects of too much debt." H. R. Rep. No. 95–595, p. 125 (1977).

Petitioner responds with the following excerpt from a later Senate Report:

> "Chapter 11, Reorganization, is primarily designed for businesses, although individuals are eligible for relief under the chapter. The procedures of chapter 11, however, are sufficiently complex that they will be used only in a business case and not in the consumer context." S. Rep. No. 95–989, p. 3 (1978).

These apparently conflicting views tend to negate the suggestion that the Congress enacting the current Code operated with a clear intent to deny Chapter 11 relief to an individual nonbusiness debtor.

Finally, we are not persuaded by the contention that Chapter 11 is unavailable to a debtor without an ongoing business because many of the Chapter's provisions do not apply to a nonbusiness debtor. There is no doubt that Congress intended that a business debtor be among those who might use Chapter 11. Code provisions like the ones authorizing the appointment of an equity security holders' committee, § 1102, and the appointment of a trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management . . . ," § 1104(a)(1), certainly are designed to aid in the rehabilitation of a business. It does not follow, however, that a debtor whose affairs do not warrant recourse to these provisions is ineligible for Chapter 11 relief. Instead, these provisions—like the references to debtor businesses in the Chapter's legislative history—reflect an understandable expectation that Chapter 11 would be used *primarily* by debtors with ongoing businesses; they do not constitute an additional prerequisite for Chapter 11 eligibility beyond those established in § 109(d).

## III

Although the foregoing analysis is dispositive of the question presented, we deal briefly with *amicus'* contention that policy considerations underlying the Code support inferring a congressional intent to preclude a nonbusiness debtor from reorganizing under Chapter 11. First, it is said that bringing a consumer debtor within the scope of Chapter 11 does not serve Congress' purpose of permitting business debtors to reorganize and restructure their debts in order to revive the debtors' businesses and thereby preserve jobs and protect investors. This argument assumes that Congress had a single purpose in enacting Chapter 11. Petitioner suggests, however, and we agree, that Chapter 11 also embodies the general Code policy of maximizing the value of the bankruptcy estate. See *Commodity Futures Trading Comm'n* v. *Weintraub,* 471 U. S. 343, 351–354 (1985). Under certain

circumstances a consumer debtor's estate will be worth more if reorganized under Chapter 11 than if liquidated under Chapter 7. Allowing such a debtor to proceed under Chapter 11 serves the congressional purpose of deriving as much value as possible from the debtor's estate.

Second, *amicus* notes that allowing a consumer debtor to proceed under Chapter 11 would permit the debtor to shield both disposable income and nonexempt personal property. He argues that the legislative history of Chapter 11 does not reflect an intent to offer a consumer debtor more expansive protection than he would find under Chapter 13, which does not protect disposable income, or Chapter 7, which does not protect nonexempt personal assets. As an initial matter, it makes no difference whether the legislative history affirmatively reflects such an intent, because the plain language of the statute allows a consumer debtor to proceed under Chapter 11. Moreover, differences in the requirements and protections of each chapter reflect Congress' appreciation that various approaches are necessary to address effectively the disparate situations of debtors seeking protection under the Code.

*Amicus* does not contend that allowing a consumer debtor to reorganize under Chapter 11 will leave the debtor's creditors in a worse position than if the debtor were required to liquidate. See Tr. of Oral Arg. 29–31. Nor could he. Section 1129(a)(7) provides that a reorganization plan may not be confirmed unless all the debtor's creditors accept the plan or will receive not less than they would receive under a Chapter 7 liquidation. Because creditors cannot be expected to approve a plan in which they would receive less than they would from an immediate liquidation of the debtor's assets, it follows that a Chapter 11 reorganization plan usually will be confirmed only when creditors will receive at least as much as if the debtor were to file under Chapter 7. Absent some showing of harm to the creditors of a nonbusiness debtor allowed to reorganize under Chapter 11, we see nothing in the

allocation of "burdens" and "benefits" of Chapter 11 that warrants an inference that Congress intended to exclude a consumer debtor from its coverage. See Herbert, Consumer Chapter 11 Proceedings: Abuse or Alternative?, 91 Com. L. J. 234, 245–248 (1986).

*Amicus* also warns that allowing consumer debtors to proceed under Chapter 11 will flood the bankruptcy courts with plans of reorganization that ultimately will prove unworkable. We think this fear is unfounded for two reasons. First, the greater expense and complexity of filing under Chapter 11 likely will dissuade most consumer debtors from seeking relief under this Chapter. See S. Rep. No. 95–989, at 3; see also Herbert, *supra*, at 242–243. Second, the Code gives bankruptcy courts substantial discretion to dismiss a Chapter 11 case in which the debtor files an untenable plan of reorganization. See §§ 1112(b) and 1129(a).

Finally, *amicus* asserts that extending Chapter 11 to consumer debtors creates the risk that these debtors will be forced into Chapter 11 by their creditors under § 303(a), a result contrary to the intent reflected in Congress' decision to prevent involuntary bankruptcy proceedings under Chapter 13. In particular, he suggests that it would be unwise to force a debtor into a Chapter 11 reorganization, because an involuntary debtor would be unlikely to cooperate in the plan of reorganization—a point that Congress noted in refusing to allow involuntary Chapter 13 proceedings. See H. R. Rep. No. 95–595, at 120.

We find these concerns overstated in light of the Code's provisions for dealing with recalcitrant Chapter 11 debtors. If an involuntary Chapter 11 debtor fails to cooperate, this likely will provide the requisite "cause" for the bankruptcy court to convert the Chapter 11 case to one under Chapter 7. See § 1112(b). In any event, the argument overlooks Congress' primary concern about a debtor's being forced into bankruptcy under Chapter 13: that such a debtor, whose future wages are not exempt from the bankruptcy estate,

§ 1322(a)(1), would be compelled to toil for the benefit of creditors in violation of the Thirteenth Amendment's involuntary servitude prohibition.    See H. R. Rep. No. 95–595, at 120. Because there is no comparable provision in Chapter 11 requiring a debtor to pay future wages to a creditor, Congress' concern about imposing involuntary servitude on a Chapter 13 debtor is not relevant to a Chapter 11 reorganization.

## IV

The plain language of the Bankruptcy Code permits individual debtors not engaged in business to file for relief under Chapter 11.    Although the structure and legislative history of Chapter 11 indicate that this Chapter was intended primarily for the use of business debtors, the Code contains no "ongoing business" requirement for Chapter 11 reorganization, and we find no basis for imposing one.    Accordingly, the judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

The Court's reading of the statute is plausible.    It is supported by the omission of any prohibition against the use of Chapter 11 by consumer debtors and by the excerpt from the introduction to the Senate Report, quoted *ante*, at 162. Nevertheless, I am persuaded that the Court's reading is incorrect.    Two chapters of the Bankruptcy Code—Chapter 7, entitled "Liquidation," 11 U. S. C. § 701 *et seq.*, and Chapter 13, entitled "Adjustment of Debts of an Individual With Regular Income," § 1301 *et seq.*—unquestionably and unambiguously authorize relief for individual consumer debtors. Chapter 11, entitled "Reorganization," § 1101 *et seq.*, was primarily designed to provide relief for corporate debtors but also unquestionably authorizes relief for individual proprietors of business enterprises.    When the statute is read as a whole, however, it seems quite clear that Congress did not

intend to authorize a "reorganization" of the affairs of an individual consumer debtor.

Section 109(d) places a limit on the class of persons who may be a debtor under Chapter 11, but it does not state that all members of that class are eligible for Chapter 11 relief.[1] It states that *"only* a person that may be a debtor under Chapter 7 . . . may be a debtor under Chapter 11 . . . ."  (Emphasis added.)   It does not, however, state that *every* person entitled to relief under Chapter 7 is also entitled to relief under Chapter 11.   In my judgment, the word "only" introduces sufficient ambiguity to justify a careful examination of other provisions of the Act, as well as the legislative history.

This examination convinces me that consumer debtors may not avail themselves of Chapter 11.   The repeated references to the debtor's "business,"[2] "the operation of the debtor's business,"[3] and the "current or former management of the debtor"[4] make it abundantly clear that the principal focus of the chapter is upon business reorganizations.   This conclusion is confirmed by the discussion of Chapter 11 in the Senate Report, which describes the provision as a "chapter for *business* reorganization" and repeatedly refers to a "business" as the subject of Chapter 11 relief.[5]   See also 124

---

[1] Section 109(d) provides:

*"Only* a person that may be a debtor under chapter 7 of this title, except a stockholder or a commodity broker, and a railroad may be a debtor under Chapter 11 of this title."   11 U. S. C. § 109(d) (emphasis added).

[2] See, *e. g.,* §§ 1101(2)(B), 1108.

[3] See, *e. g.,* §§ 1103(c)(2), 1105, 1106(a)(3).

[4] See § 1104(b).

[5] The Senate Report contains the following explanation of Chapter 11 reorganizations:

"Chapter 11 deals with the reorganization of a financially distressed business enterprise, providing for its rehabilitation by adjustment of its debt obligations and equity interests.   It should be distinguished from the bankruptcy liquidation under chapter 7 or the adjustment of the debts of an individual with regular income under chapter 13.

"Chapter 11 replaces chapters X, XI and XII of the Bankruptcy Act, Chapter 11 also includes special provisions for railroads in view of the im-

168

Cong. Rec. 34007 (1978) (Chapter 11 is a "consolidated approach to business rehabilitation") (statement of Sen. DeConcini).

The House Report, however, is more significant because it emphasizes the relationship between different chapters of the Code. The Report unambiguously states that a Chapter 7 liquidation is "the only remedy" for "consumer debtors [who] are unable to avail themselves of the relief provided under chapter 13." H. R. Rep. No. 95–595, p. 125 (1977). See also 124 Cong. Rec., at 32392, 32405 (Chapter 11 is "a consolidated approach to business rehabilitation" and a "new commercial reorganization chapter") (statement of Rep. Edwards). The accuracy of the statement in the House Report

---

pact of regulatory laws on railroad debtors and replaces section 77 of the Bankruptcy Act. A single chapter for all business reorganizations will simplify the law by eliminating unnecessary differences in detail that are inevitable under separately administered statutes.

"Business reorganizations have been governed principally by chapters X and XI, both of which have been adopted by the Congress as part of the bankruptcy reforms in 1938. These chapters were not intended to be alternate paths of reorganization; they were to be mutually exclusive. Chapter X was meant for the reorganization of public companies and chapter XI for the rehabilitation of small and privately owned businesses.

"That schematic design was well conceived, but flawed somewhat by the failure to include a definition of a 'public company.' As a result, considerable litigation developed, mostly on the initiative of the Securities and Exchange Commission, over whether a case belonged in chapter X or chapter XI. This issue came to the Supreme Court in three cases, the last one in *SEC* v. *American Trailer Rentals, Inc.*, 379 U. S. 594 (1965), but the Court did not enunciate a hard-and-fast rule for all cases. Although it announced some guidelines, management and creditors of large public companies have continued to resort to chapter XI.

"The single chapter for business reorganization, which the bill provides, will eliminate unprofitable litigation over the preliminary issue as to which of the two chapters apply. . . .

"Reorganization, in its fundamental aspects, involves the thankless task of determining who should share the losses incurred by an unsuccessful business and how the values of the estate should be apportioned among creditors and stockholders." S. Rep. No. 95–989, pp. 9–10 (1978).

is confirmed by a comparison of the text of Chapter 11 with the text of Chapter 13.

Above, I noted the striking difference between the chapter titles — "Reorganization" for Chapter 11 as opposed to "Adjustment of Debts of an Individual With Regular Income" for Chapter 13. Also significant is the conspicuous omission from Chapter 11 of both an important limit and an important protection included in Chapter 13. Chapter 13 relief is only available to individuals whose unsecured debts amount to less than $100,000 and whose secured debts are less than $350,000. See 11 U. S. C. § 109(e). Chapter 11 contains no comparable limit. Congress would have accomplished little in imposing this limit on the adjustment of individual consumer debt through Chapter 13 if Congress at the same time allowed the individual to avoid the limitation by filing under Chapter 11.[6]

More important, the Code expressly provides that involuntary proceedings can only be instituted under Chapter 7 and Chapter 11. See 11 U. S. C. § 303(a). A creditor therefore may not force an individual consumer debtor into an involuntary Chapter 13 proceeding. Under the Court's reading of the Act, however, a creditor could institute an involuntary proceeding under Chapter 11 against any individual with regular income. It seems highly unlikely that Congress intended to subject individual consumer debtors, such as pensioners, to involuntary Chapter 11 proceedings while at the same time prohibiting involuntary Chapter 13 proceedings against the same class of debtors.

---

[6] Although the Court believes that permitting consumer debtors to avail themselves of Chapter 11 will not adversely affect their creditors, *ante*, at 164–165, I am not so sure. It takes time and money to determine whether a plan will provide creditors with benefits equal to those available through liquidation and still more time and money to find out whether such a predictive decision turns out to be correct or incorrect. The "complex" Chapter 11 process, see S. Rep. No. 95–989, p. 3 (1978), will almost certainly consume more time and resources than the simpler Chapter 7 procedures.

For these reasons, notwithstanding the excerpt from the Senate Report on which the Court relies, I would, in accordance with the clear statement in the House Report, read the statute as a whole to limit Chapter 11 relief to business debtors. I therefore respectfully dissent.