In re TRIDENT ASSOCIATES LIMITED PARTNERSHIP, Debtor.

TRIDENT ASSOCIATES LIMITED PARTNERSHIP, a Michigan Limited Partnership, d/b/a Beztak of Tri Atria Limited Partnership, Plaintiff–Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 93–2469.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 26, 1995.

Decided May 1, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied May 25, 1995.

Sheldon S. Toll (argued and briefed) and Seth D. Gould, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for plaintiff-appellant.

Judith G. Miller (argued and briefed) and Michael S. Khoury, Clark, Klein & Beaumont, Detroit, MI, for defendant-appellee.

Before: CONTIE, RYAN, and SILER, Circuit Judges.

RYAN, Circuit Judge.

Trident Associates Limited Partnership, a Michigan limited partnership, appeals from the district court's judgment affirming the bankruptcy court's dismissal of Trident Associates' petition under Chapter 11. Trident Associates assigns one error: The bankruptcy court abused its discretion when it lifted the automatic stay and dismissed Trident Associates' petition on the ground that it filed its petition in bad faith.

Trident Associates makes two arguments, one legal and the other factual: 1) the Supreme Court has *sub silentio* overruled this court's precedent establishing that a Chapter 11 filing may be dismissed for bad faith; and 2) the bankruptcy court clearly erred when it found that Trident Associates filed its petition in bad faith. Because we reject both of these arguments, we conclude that Trident Associates' assignment of error is without merit and we therefore affirm the decision of the bankruptcy court.

## I.

This case involves Metropolitan Life Insurance Company's attempts to foreclose its mortgage in the Tri Atria Office Center building and the 13 acres on which it sits in Farmington Hills, Michigan. On October 13, 1987, MetLife loaned $23 million to Tri Atria Company, a Michigan co-partnership. Tri Atria Company was the first identity that this debtor had. The debtor has had several identities all the while representing the interests of the Beznos and the Luptak families.

On December 27, 1990, the principals of Tri Atria Company co-partnership formed a new entity, Beztak of Tri Atria Limited Partnership. On the same day, Beztak of Tri Atria was reorganized. The next day, all assets from Tri Atria Company were transferred by quit claim deed to Beztak of Tri Atria Limited Partnership. The mortgage Tri Atria had given to MetLife required that such transactions be approved by MetLife, and MetLife gave its approval through its agent's signature on a letter agreement the agent signed on July 31, 1991. The letter agreement contained numerous requirements, including that the general partners of Beztak of Tri Atria always maintain at least a 28.43% interest in the partnership.

Beztak of Tri Atria failed to make two tax payments on the property, the winter 1990 and the 1992 property taxes. The outstanding taxes totaled $972,693.11. This failure constituted a default under the mortgage. Based on this default and consistent with the terms of the mortgage, MetLife accelerated the debt and provided the appropriate notice and recording. This acceleration was effective May 1, 1993. On May 10, 1993, the Oakland County Treasurer conducted a forced sale of its tax lien interest for the 1990 winter taxes. MetLife purchased this lien for $314,066.

On May 14, 1993, MetLife advertised notice of its proposed foreclosure sale of the property. The foreclosure sale was scheduled for June 15, 1993. On May 21, 1993, MetLife filed suit against Beztak of Tri Atria in the United States District Court for the Eastern District of Michigan seeking the appointment of a receiver, declaratory and injunctive relief, and recovery of converted funds, amongst other relief. The foreclosure sale was then postponed from June 15th to the 22nd so that a hearing could be held in the district court. In this proceeding, Bez-

tak of Tri Atria was represented by the law firm of Evans & Luptak of which Mr. Luptak and Mr. Beznos, who were general partners of Beztak of Tri Atria, were principals.

On or before June 14, 1993, one day before the scheduled hearing in the district court, Mr. Toll, an attorney from a firm other than Evans & Luptak, prepared a Chapter 11 petition for a debtor called Trident Associates Limited Partnership. This petition was signed on June 14th by a person who represented himself to be the vice-president of Trident General Inc., Trident Associates' general partner. However, at the time this petition was signed, neither Trident Associates nor Trident General existed.

On June 15, 1993, four significant events took place. First, MetLife heard a rumor that Beztak of Tri Atria was preparing to file a Chapter 11 petition. MetLife took advantage of the prior assignment from Beztak of Tri Atria and notified all of the tenants of the Tri Atria Office Center to pay their rent to MetLife rather than Beztak.

The second event of the day was that the district court conducted a hearing on MetLife's request for the appointment of a receiver and for injunctive relief. At this hearing, Beztak of Tri Atria was represented by attorneys from Evans and Luptak, including Kenneth Clarkston, whose presence is important because of what followed. At this hearing, the district court denied MetLife's requests and instructed the parties to continue their negotiations. MetLife advised the court of the rumors it had heard concerning Beztak of Tri Atria filing a bankruptcy petition. The court was critical of any attempt to delay or seek a different forum. Mr. Moran of the Evans and Luptak firm assured the court that he was unaware of any intention to file a bankruptcy petition, but told the court that he would have to confirm that with the client.

The third event of June 15th was the incorporation of Trident General, the entity listed on the bankruptcy petition that was later filed as general partner of the debtor, Trident Associates. The incorporator of Trident General was Kenneth Clarkston, the lawyer of the Evans and Luptak firm who was present at the hearing when Mr. Moran stated that he was unaware of any possible bankruptcy filing.

The last event of the day was perhaps the most significant: the total restructuring of Beztak of Tri Atria. Through a Certificate of Amendment of Limited Partnership, Beztak of Tri Atria changed its name to Trident Associates Limited Partnership. In addition, the structure was changed so that Trident General became the only general partner of the partnership and held only a 1% interest in the partnership. All the other general partners became limited partners. These transactions violated the letter agreement, and so constituted default under the mortgage, in two ways: first, the agreement requested that the general partners of Beztak of Tri Atria maintain at least 28.43% interest in the partnership, and second, any restructuring of this nature required the consent of MetLife.

On June 21, 1993, one day before the foreclosure sale, Mr. Moran of Evans and Luptak filed a suit in the Circuit Court for the County of Oakland, Michigan. This suit was filed in the name of Beztak of Tri Atria Limited Partnership against MetLife. Beztak of Tri Atria had been renamed and restructured six days earlier, so when this suit was filed, Beztak of Tri Atria was no longer a legal entity. This suit asked for a temporary restraining order to enjoin the foreclosure sale. In support of this motion was an affidavit from attorney Jerry Luptak dated June 21, 1993. In that affidavit, Luptak asserted that he was a principal of "Beztak of Tri Atria Limited Partnership," which he claimed was the owner of the property subject to foreclosure. This sworn statement was false in that Beztak of Tri Atria was then Trident Associates Limited Partnership and Luptak was no longer a principal, but only a limited partner. The request for the TRO was denied.

The next day, June 22, 1993, was the day scheduled for the foreclosure sale. It was to take place at 10:00 a.m. Prior to 10:00 a.m., a lawyer from Mr. Toll's firm called the persons conducting the foreclosure sale and told them that a bankruptcy petition had been filed and so the sale should not be

conducted. The foreclosure sale took place nevertheless, and MetLife was the high bidder, buying the property for $19.5 million. At 10:09 a.m., the Chapter 11 bankruptcy petition in the name of Trident Associates Limited Partnership was filed with the bankruptcy court clerk. There is a factual dispute concerning the exact time that the foreclosure sale took place, whether it was at 10:00 a.m. or 11:00 a.m. Because the bankruptcy court lifted the automatic stay and dismissed the petition for bad faith, this disputed fact has become moot.

On July 2, 1993, Trident Associates filed a plan for reorganization. MetLife filed a motion to lift or annul the automatic stay so that it could proceed with its foreclosure of the Tri Atria Office Center in the state court. On July 15, 1993, the bankruptcy court held a hearing on the issue of lifting the automatic stay. At that time, counsel stipulated to the admissibility and authenticity of the documents that make up the record and counsel offered arguments for and against the motion. The bankruptcy court found that Trident Associates had filed its bankruptcy petition in bad faith and so granted MetLife's motion to lift the automatic stay. The court also dismissed Trident Associates' Chapter 11 petition. Trident Associates appealed to the district court, which affirmed. This appeal followed.

## II.

■ This court has recently identified the standards that are applied when it reviews decisions of the bankruptcy court. First, this court directly reviews the bankruptcy decision, not the district court's review of the bankruptcy court's decision. A bankruptcy court's decision to lift the automatic stay is reviewed for an abuse of discretion and the bankruptcy court's findings of fact will be reversed only if they are clearly erroneous. Lastly, we review *de novo* the bankruptcy court's conclusions of law. *In re Laguna Associates Ltd. Partnership (Laguna Associates Ltd. Partnership v. Aetna Casualty & Sur. Co.),* 30 F.3d 734 (6th Cir. 1994).

## A.

■ Trident Associates argues that recent Supreme Court decisions have *sub silentio* overruled the eight circuits, including this one, that have held that a Chapter 11 bankruptcy petition may be dismissed if it is filed in bad faith. We conclude that this argument is wholly unpersuasive.

The bankruptcy court may dismiss a Chapter 11 petition "for cause." 11 U.S.C. § 1112(b). We have consistently held that a debtor's Chapter 11 petition may be dismissed if it was filed in bad faith. *See, e.g., In re Laguna Associates,* 30 F.3d 734; *In re Charfoos,* 979 F.2d 390 (6th Cir.1992); *In re Caldwell (Hardin v. Caldwell),* 851 F.2d 852 (6th Cir.1988).

Recent Supreme Court decisions have overturned circuit court decisions that had read into the bankruptcy code requirements that were not specified in the text. In *Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991), the Court overturned the "ongoing business requirement" that most circuits, including this one, had applied to petitions filed under Chapter 11. *Id.* at 166, 111 S.Ct. at 2202. The Court held that the plain language of 11 U.S.C. § 109 allowed *individuals* relief under Chapter 11. In *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), the Court held that courts may not impose a good faith requirement on debtors who list property in the bankruptcy schedule as exempt pursuant to 11 U.S.C. § 522(*l*). *Id.* at 641–44, 112 S.Ct. at 1647–48.

In both *Taylor* and *Toibb,* the Court was dealing with very specific statutory language. In both cases, the Court rejected arguments that an extra requirement could be "engrafted" onto language that plainly did not create the requirement. Trident Associates characterizes the cases from this and other circuits as "reading a good faith requirement into § 109," which is the section that describes who may file a petition. It is true that § 109 has no good faith requirement, but that argument misses the point that 11 U.S.C.

§ 362(d)(1)[1] allows the automatic stay to be lifted "for cause," and 11 U.S.C. § 1112(b)[2] allows a petition to be dismissed "for cause." Neither section defines "cause," but this court and others have concluded that debtor bad faith can constitute cause under both provisions. It is a very different argument to say that "bad faith" cannot, as a matter of law, constitute "cause" than to say that § 109 does not require good faith. Neither the holding of *Taylor* nor *Toibb* is broad enough to achieve the result for which Trident Associates argues.

**B.**

Trident Associates makes several attacks on the bankruptcy court's finding of bad faith. Essentially, it attacks the bankruptcy court's factual conclusions and its discretionary decisions to lift the automatic stay and dismiss the petition. Trident Associates bears a heavy burden because, as stated above, while we review the bankruptcy court's legal conclusions *de novo*, we examine its factual determinations only for clear error.

 The bankruptcy court may lift the automatic stay "for cause." § 362(d)(1). Under § 1112(b), a court may dismiss a Chapter 11 petition "for cause." Neither § 362(d) nor § 1112(b) define "cause," so "courts must determine whether discretionary relief is appropriate on a case-by-case basis." *In re Laguna Associates*, 30 F.3d at 737. Under both of these sections, bad faith can constitute cause. *Id.* at 737–38. Because the "totality of the circumstances" must be considered, no single test for good faith can be recited, but this court has laid out some guidelines:

[G]ood faith is an amorphous notion, largely defined by factual inquiry. While no single fact is dispositive, courts have found the following factors meaningful in evaluating an organizational debtor's good faith:

(1) the debtor has one asset;

(2) the pre-petition conduct of the debtor has been improper;

(3) there are only a few unsecured creditors;

(4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;

(5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

(6) the filing of the petition effectively allows the debtor to evade court orders;

(7) the debtor has no ongoing business or employees; and

(8) the lack of possibility of reorganization.

 *Id.* at 738 (citations and internal quotations omitted). Also, the court acknowledged what the Fifth Circuit called the "new debtor syndrome," in which "a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors." *Id.*

The factual similarity between *In re Laguna Associates,* in which this court affirmed a finding of bad faith, and the present case is striking but not surprising. *In re Laguna*

---

1. § 362(d) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [§ 362(a)], such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
> (2) with respect to a stay of an act against property under [§ 362(a)], if—
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization.

2. § 1112(b) provides in pertinent part:

> Except [in a situation not applicable here], on request of a party in interest ... and after notice and a hearing, the court may ... dismiss a case under this chapter ... for cause, including—
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
> (2) inability to effectuate a plan;
> ....

*Associates* also involved a Beztak property and a scheme to avoid foreclosure involving Mr. Toll, the lawyer for Trident Associates. While Trident Associates has attempted to distinguish the present case from *In re Laguna Associates,* we find those distinctions to be meaningless. In the present case the following factors from *Laguna* weigh heavily in support of the bankruptcy court's finding:

First, Trident Associates exhibits the "new debtor syndrome": it is a one-asset debtor created on the eve of foreclosure to isolate the property and MetLife from the rest of the Beztak real estate operations.

The second *Laguna* factor is met because the pre-petition conduct of this debtor was improper. We find three separate acts to support this conclusion. First, at the hearing on MetLife's request for a receiver, counsel for Beztak of Tri Atria arguably misled the district court when he stated that he knew nothing of the possibility of bankruptcy. The parties on appeal hotly contest whether any deception took place. After reviewing the transcript of the hearing before the district court and the transcript of counsels' arguments to the bankruptcy court, we are satisfied that counsel for MetLife was correct when she characterized counsel for the debtor as being less than frank with the district judge. In fact, when the bankruptcy court directly asked the debtor's counsel whether there had been some deception, counsel replied, "There may have been, but I don't think it should be seen in the light that MetLife would have you see it."

A second act of improper pre-petition conduct by the debtor was the unauthorized restructuring of Beztak of Tri Atria so that all the general partners were removed from general liability and given limited liability. This restructuring violated the letter agreement and constituted another default under the mortgage. This restructuring only served the purpose of using the bankruptcy court to protect the general partners from liability, and weakened MetLife's position of security regarding the outstanding amount of approximately $22 million.

A third act of improper conduct was the filing of the state suit seeking a TRO to stop the foreclosure. The suit was filed in the name of Beztak of Tri Atria, an entity that no longer existed, and Mr. Luptak's affidavit made assertions that he must have known were not true.

The fourth *Laguna* factor is also present here. The debtor was unsuccessful in attempting to avoid the foreclosure sale in state court. After that attempt was unsuccessful, the debtor filed a Chapter 11 bankruptcy petition.

The seventh *Laguna* factor is met because Trident Associates has no employees and has no ongoing business. The employees that manage the Tri Atria Office Center are employed by Beztak Realty. The general partner of Trident Associates, Trident General, is a shell corporation formed to allow the former general partners to avoid personal liability.

The eighth *Laguna* factor is present here because there seems to be no possibility of reorganizing the debtor. The plan that Trident Associates submitted merely calls for a delay in MetLife receiving its payments and does not suggest what possible means Trident Associates will have to make any payments. MetLife currently has the rights to all rent payments from the tenants in the Tri Atria Office Center.

This court in *In re Laguna Associates* stated that the finding of bad faith is a fact based determination that is reviewed for clear error. After reviewing the record, we are convinced that the facts of this case cannot be meaningfully distinguished from *Laguna.* Consequently, we hold that the bankruptcy court did not clearly err when it found Trident Associates had filed in bad faith. We further hold that the bankruptcy court did not abuse its discretion by lifting the automatic stay and dismissing the petition.

### III.

For these reasons, the bankruptcy court's lifting of the automatic stay and dismissal of Trident Associates' petition are **AFFIRMED.**