JUSTICE FREEMAN, dissenting: The majority holds that the provision contained in section 2 — 18(4)(c) of the Juvenile Court Act of 1987 (705 ILCS 405/2 — 18(4)(c) (West 2006)) requiring a minor’s statements to be corroborated and cross-examined is inapplicable to temporary custody proceedings. I believe that my colleagues have improperly reached this issue. It is my view that leave to appeal in this matter was improvidently granted, and that this appeal should be dismissed. In order to fully grasp the error of the majority, focus must be directed to the procedural history of this case. At the close of the State’s case in chief at the adjudicatory hearing, counsel for the minors’ mother — Jacqueline M. — moved for a directed finding that the State had failed to prove by a preponderance of the evidence that M.H. had been a victim of sexual abuse. The circuit court granted the motion and dismissed the counts in the petitions for adjudication of wardship that alleged the minors were neglected and abused based upon the sexual abuse allegations. The circuit court, however, entered an order adjudicating the minors neglected based upon Jacqueline’s alleged failure to comply with the directive to keep the minors away from Jacqueline’s live-in boyfriend, Jorge G. Jacqueline thereafter filed a motion to reconsider. The circuit court denied that motion and subsequently entered a dispositional order, making the minors wards of the court and awarding DCFS legal guardianship. On appeal, Jacqueline challenged the adjudication of neglect on two grounds. First, she asserted that the temporary custody order on which the adjudication was based was improper because M.H’s out-of-court statements were not subject to cross-examination and the State failed to present evidence to corroborate the report of abuse. Accordingly, she asserted that there was no probable cause to grant temporary custody to DCFS and to implement a safety plan. Second, Jacqueline argued that the circuit court erred in adjudicating the minors neglected based upon her alleged violation of a DCFS safety plan, as the State failed to prove that a safety plan existed, that she understood it, or that it was violated. The appellate court agreed with Jacqueline and reversed the judgment of the circuit court. The court held that the State failed to prove at the adjudicatory hearing that Jacqueline neglected the minors by violating the DCFS no-contact directive. The court noted that the sole basis for implementing that directive was the allegation, based upon M.H.’s out-of-court statements, that Jorge sexually abused her, “even though the defects in the shelter-care hearing meant that there was insufficient evidence of sexual abuse to warrant imposing the plan in the first place.” 382 Ill. App. 3d at 1101. The court explained that because M.H.’s hearsay statements introduced at the temporary custody hearing were neither corroborated nor subject to cross-examination pursuant to section 2 — 18(4)(c) of the Juvenile Court Act, they were insufficient to support the probable cause finding of abuse and neglect. 382 Ill. App. 3d at 1100. The court further noted that its ruling was consistent with the 1992 decision in In re M.B., 241 Ill. App. 3d 697 (1992), which held that section 2 — 18(4)(c) of the Juvenile Court Act applied to temporary custody hearings as well as adjudicatory hearings. 382 Ill. App. 3d at 1099. In addition, the appellate court observed that, in finding neglect, the circuit court focused solely upon Jacqueline’s noncompliance with the plan, regardless of the reasons for instituting it. The appellate court concluded: “If we were to adopt the State’s position [that the statute did not apply], a flimsy allegation of abuse could be the basis for instituting an onerous safety plan, the noncompliance with which would trigger an adjudication of neglect, which is very serious. While the best interests of the minors is paramount, adjudicating [the minors] neglected based on respondent’s noncompliance with an unfounded safety plan prejudiced respondent and the family as a whole.” 382 Ill. App. 3d at 1101-02. Although the State took the position before the appellate court that the issue of awarding DCFS temporary custody was moot, the court disagreed, and, in any event, believed that the issue could be reached under the public interest exception to the mootness doctrine. 382 Ill. App. 3d at 1100. Accordingly, the appellate court reversed the circuit court’s order adjudicating the minors neglected. In its petition for leave to appeal to this court, the State asserted that while it did “not seek a reversal of the appellate court’s judgment in this case,” it nevertheless sought review of the court’s reasoning “because the appellate court reached a moot issue under the public interest exception and, in so doing, misguided the lower courts in their application of section 2 — 18(4) (c) of the Act.” The State’s petition then listed two points for reversal: (1) that the appellate court’s application of section 2 — 18(4)(c) to a temporary custody hearing was contrary to the language and purpose of the Juvenile Court Act; and (2) that the appellate court’s ruling that the neglect adjudication did not render the temporary custody hearing moot was erroneous. In addition to reversal of that portion of the appellate opinion which discussed section 2 — 18(4) (c), the State also requested, in the alternative, that this court exercise its supervisory authority to vacate that portion of the appellate court’s opinion. After we granted the State’s petition for leave to appeal, the State’s subsequent brief to this court again asserted that it was “seek[ing] reversal only of the appellate court’s legal holding that the evidentiary limitation in section 2 — 18(4)(c) of the [Juvenile Court] Act applies to temporary custody hearings,” and that “[t]he People do not challenge the rest of the appellate court’s decision, which vacated the finding of neglect for [I.H.] and [M.H.].” I further note, however, that although the State raised the issue of mootness in its petition for leave to appeal in relation to its challenge of the appellate court’s reasoning, in its brief to this court the State does not argue — much less mention — mootness in any context. In addition, the State abandoned its call for the alternative relief requested in its petition, and now asks that the holding of the appellate court regarding section 2 — 18 (4) (c) be vacated. As a direct result of the State’s unorthodox position in this appeal, i.e., that it is not challenging the judgment of the appellate court, Jacqueline has not participated in the instant action. Subsequent to the State’s filing of its brief, Jacqueline’s counsel informed this court, in a letter dated December 23, 2008, that “[bjecause the State is not challenging the status of my client in the appeal, she has chosen not to proceed with arguments in this cause.” I note that this critical fact is conspicuously absent from the majority opinion. Although we granted the State’s petition for leave to appeal, my colleagues do not consider the fundamental threshold issue of whether this appeal has been improvidently granted. The position taken by the State is in direct conflict with the long-settled principle that we review the judgment of the appellate court, regardless of its rationale. People v. Durr, 215 Ill. 2d 283, 296 (2005). In addition, because the State as appellant is not challenging the judgment of the appellate court — the only proper subject of our review — we cannot provide meaningful relief, and any decision rendered in this matter is essentially advisory in nature. See In re Mary Ann P., 202 Ill. 2d 393, 401 (2002). Traditionally, this court avoids rendering advisory opinions. Oliveira v. Amoco Oil Co., 201 Ill. 2d 134, 157 (2002). The majority’s acceptance of the State’s challenge solely to the rationale underlying the judgment of the appellate court and not to the judgment itself is a dramatic departure from our well-settled procedure, which not only draws into question the appropriate manner in which to petition for leave to appeal to this court, but also invites an element of gamesmanship to be injected into this process by allowing an appellant to pursue a strategy whereby that party does not contest the judgment below, but, for whatever hidden reason, seeks only to overturn a rationale within the case. The potentially negative results flowing from the majority’s acceptance of this approach are evident in the instant appeal. The majority’s opinion on this important issue of statutory construction is based upon its consideration of the arguments of only one side in this case, which is a direct result of the State’s decision to divorce the appellate court’s judgment from its reasoning, and to challenge only the latter, not the former. I submit that one-sided arguments are an inevitable outgrowth of the majority’s endorsement of the State’s departure from conventional procedure.[3] Accepting a petition for leave to appeal from a party seeking only review of a rationale and not a reversal of a judgment could lead the opposing party to reasonably decide — as Jacqueline did here — to forgo involvement in the appeal. Indeed, the investment of time and resources to counter an appeal that will not alter the outcome of a judgment which was in that party’s favor makes little sense, particularly if that party has no concern regarding the rationale supporting the judgment. Acceptance of such a practice will engender gamesmanship, as parties attempt to gain strategic advantage through the use of the appellate process. With today’s opinion, the majority places its imprimatur on this practice. As a result of allowing this appeal to proceed, the majority fully adopts the arguments advanced by the State without the benefit of hearing arguments for a different construction of this statute from the other side.[4] In our courtroom in Springfield, the motto “Audi Alteram Partem” is inscribed over the entrance, which reminds us to “Hear the other side” to ensure fairness in judicial matters. I fear that my colleagues have forgotten this principle in deciding this matter, by overruling case law that has not been contested in nearly 20 years, based upon a single-sided argument. Although there has been no adversarial testing of the State’s arguments due to the manner in which it has proceeded in this case, we are nevertheless binding later courts which may have the opportunity to fully hear and test the opposing views on this issue. The concerns I have set forth regarding my colleagues’ zeal to render an opinion in this case are further supported by the fact that the majority states that it “affirm [s] the judgment of the appellate court,” but “reject[s] its conclusion that section 2 — 18(4)(c) of the Act applies to temporary custody hearings.” 238 Ill. 2d at 433. As stated, a fundamental principle of appellate law is that when an appeal is taken from a judgment of a lower court, “ ‘[t]he question before [the] reviewing court is the correctness of the result reached by the lower court and not the correctness of the reasoning upon which that result was reached.’ ” People v. Johnson, 208 Ill. 2d 118, 128 (2003), quoting People v. Novak, 163 Ill. 2d 93, 101 (1994). In the instant matter, this usual procedure is turned on its head, with no reasoned basis for doing so. Further, by “reject[ing]” the appellate court’s “conclusion” that the provisions in section 2 — 18 (4) (c) of the Juvenile Court Act apply to temporary custody hearings, the majority has stripped away the sole legal basis for the appellate court’s reversal of the circuit court’s judgment. As a result, the majority has performed the unprecedented feat of overturning a judgment of the circuit court absent any legal rationale for doing so.[5] Moreover, although I am in complete agreement with the majority’s assertion that the paramount concern in these proceedings is the best interests of the children to assure that they are safe and secure in all instances, I note that by their opinion today, my colleagues do nothing to protect I.H. and M.H., the two minors involved in this proceeding. The majority determines that the appellate court’s reasoning was erroneous in interpreting section 2 — 18 (4) (c) and sets forth a new interpretation of this statutory provision which supports the judgment of the circuit court. However, by virtue of the unconventional procedural posture of this case, the majority’s opinion nevertheless affirms the judgment of the appellate court, which reverses the circuit court. In other words, the majority’s opinion overturns a judgment of the circuit court which, under the analysis and reasoning contained within that same opinion, should be affirmed. The internal inconsistency and confusion within the majority opinion, coupled with its affirmance of a reversal of a judgment of the circuit court without any stated legal rationale which is in direct contradiction to its own holding in its opinion, further supports my decision to dissent. It is only in the penultimate paragraph of its opinion that the majority briefly acknowledges the difficulty created by the State’s position “challenging the sole rationale relied upon by the appellate court in reaching its judgment and, at the same time, asserting that the judgment of the appellate court should be affirmed.” 238 Ill. 2d at 446. The majority, however, quickly and unconvincingly dismisses any concerns by characterizing the State’s position as a “concession of error with respect to other arguments that were raised by the mother before the appellate court but not reached in the appellate court’s opinion.” 238 Ill. 2d at 446. Specifically, the majority “understand[s]” the State’s position “to be a concession that ‘the State failed to prove that a safety plan existed, that respondent understood it, or that respondent violated it.’ ” 238 Ill. 2d at 446. Absent analysis or explanation, my colleagues “agree with and accept the State’s concession” and conclude on that basis that “the judgment of the appellate court must be affirmed.” 238 Ill. 2d at 446. I submit that by remodeling the arguments made by the State, the majority is treading dangerously close to acting as an advocate for the State, a role which is inappropriate for an appellate court to assume. Illinois Department of Healthcare & Family Services v. Warner, 227 Ill. 2d 223, 234 n.2 (2008). At no time during the course of these proceedings has the State ever “conceded error” on a point in this appeal, and this characterization of the State’s position does not accurately reflect the manner in which it has litigated this case. Accordingly, for the above reasons, I cannot join the majority opinion. In contrast, I note that the United States Supreme Court does not entertain one-sided argument in cases wherein it has granted certiorari. Pursuant to its custom and practice, the Court appoints attorneys to act as amicus curiae to brief and argue a case pending before it to ensure that both sides of a case are represented and that both sides of the argument are heard. See, e.g., Toibb v. Radloff, 501 U.S. 157, 160 n.4, 115 L. Ed. 2d 145, 150 n.4, 111 S. Ct. 2197, 2199 n.4 (1991) (where the named respondent declined to respond to the petitioner’s petition for certiorari, and where that petition was granted, the Court appointed counsel to serve as amicus curiae in support of the judgment of the Court of Appeals below); R. Stern & E. Gressman, Supreme Court Practice §13.14, at 743 (9th ed. 2007) (it is the custom of the Court to “invite[ ] the amicus to present an argument because for some reason no other counsel would have represented that side of the case”). It is my view that such an approach is preferable over a court of permissive review entertaining argument as to only one side of a case. Indeed, adopting a custom and practice similar to that of the Supreme Court would fit well with this court’s encouragement of pro bono service (see 210 Ill. 2d R. 756(f)). In fact, nowhere in the majority opinion is it acknowledged that this case is being decided upon a one-sided argument. As a further example of the conundrum in which the majority finds itself, the “Conclusion” section of its opinion states that the majority “affirms” the judgment of the appellate court, but that “[t]o the extent the appellate court applied section 2 — 18(4)(c)’s evidentiary limitation to a temporary custody hearing, we overrule that portion of In re M.B., 241 Ill. App. 3d 697 (1992).” 238 Ill. 2d. at 446. Note, the majority is affirming a judgment which is grounded in a case which it has now overruled.