In the Matters of Dorothy Bourg BER-
GERON, Evelina Bourg Galler, Mildred
Bourg Voisin, Robert L. Martin, Jr. and
Marion Pontiff Martin, Debtors.

Bankruptcy Nos. 97–14713, 97–
14714, 97–14722, 97–14789.

United States Bankruptcy Court,
E.D. Louisiana.

March 17, 1998.

See also 691 So.2d 213.

Philip K. Jones, Liskow & Lewis, New
Orleans, LA, for Mildred B. Voisin.

Edward Arnold, Adams & Reese, New Or-
leans, LA, Randall Alfred, Houma, LA, for
Robert L. Martin, Jr.

John M. Landis, Stone, Pigmon, New Orleans, LA, for Dorothy B. Bergeron.

Paul N. Debaillon, Lafayette, LA, for Evelina B. Gallier.

## REASONS FOR ORDER

JERRY A. BROWN, Bankruptcy Judge.

The motion to dismiss filed by Harry Bourg Corporation ("HBC") asserts that the pending Chapter 11 petitions were filed in bad faith.[1] The motion is denied.

### I. Facts

#### A. State court proceedings.

HBC is a closely-held corporation established in 1955 by the late Harry Bourg. Its principal asset is over 14,000 acres of marshland in Terrebonne Parish, Louisiana, a significant portion of which is subject to mineral leases. The stock in HBC is owned by Harry Bourg's seven children and/or the children of his deceased children. Gertie B. Theriot, Nora B. Breaux, and each of the four debtors are directors of HBC. Mildred Bourg Voisin serves as president and chairman of the board of directors, while Dorothy Bourg Bergeron is the secretary/treasurer.

Controversies arose between the stockholders that led to a shareholder's derivative suit being filed on behalf of the corporation by two minority stockholders, Mrs. Theriot and Mrs. Breaux. Following a jury trial in the 32nd Judicial District Court for the Parish of Terrebonne, a judgment of $5,798,441 was entered in favor of HBC and against Mrs. Voisin, Mrs. Bergeron. Evelina B. Gallier, Robert Martin, Jr., and Mr. Carl Bourg (the "majority stockholders" or the "judgment-debtors").[2] The First Circuit Court of Appeals of Louisiana affirmed the trial court judgment.[3] The judgment-debtors' application for a writ of certiorari was denied.[4] Accordingly, the judgment of the 32nd Judicial District Court is final.

The Clerk of Court of Terrebonne Parish issued a writ of fieri facias and seized the stock of the majority stockholders. A judicial sale was scheduled for August 27, 1997.[5] The minority stockholders refused to agree to the request of the majority stockholders to continue the sheriff's sale in order to permit the majority shareholders to obtain an appraisal of the shares to be sold. Thus. four of the five majority stockholders filed for Chapter 11 relief. The stock of the other judgment-debtor. Mr. Carl Bourg, was sold at a sheriff sale on October 22, 1997 for $264,679.21. HBC was the only bidder.

#### B. Chapter 11 proceedings.

Voluntary petitions for relief under Chapter 11 were filed by Mrs. Bergeron and Mrs. Gallier on August 22, 1997, by Mrs. Voisin on August 25, 1997, and by Mr. Martin and his wife, Marion Pontiff Martin, on August 27, 1997. The four petitions were consolidated for joint administration by order dated September 8, 1997.

The assets of HBC have not been appraised since its creation. By order dated November 18, 1997, the court authorized the retention of several professionals—a CPA, a real estate appraiser, and a mineral value appraiser—to appraise the value of HBC and the shares of stock owned by the debtors.

### II. Analysis

The motion of HBC to dismiss is based on three premises:

(1) the four individual debtors are not in business and cannot formulate a plan of reorganization:

(2) the debtors filed in bad faith because this is essentially a two party dispute involving a single asset; and

(3) the debtors cannot confirm a plan because they cannot obtain the affirmative vote of a class of creditors.

---

1. Pl. 56. The motion to dismiss was filed on behalf of HBC by Gertie B. Theriot and Nora B. Breaux, shareholders and directors of HBC.

2. Pl. 58, Memorandum in Support of Motion to Dismiss, Ex. A.

3. *Theriot v. Bourg*, 691 So.2d 213 (La.App. 1st Cir.1997), *writ denied*, 696 So.2d 1008 (La.1997), *reconsideration denied*, 701 So.2d 146 (La.1997).

4. *Id.*

5. Pl. 58, Ex. C.

### A. Debtors' engagement in business.

■ HBC's argument that the debtors are not entitled to file for Chapter 11 relief because they are not engaged in a business is unavailing. First, the record does not establish that this is true as to all of the debtors. The "business" of Mrs. Voisin and Mrs. Bergeron is conducting the affairs of HBC as its president and secretary/treasurer. Evidently, the other debtors are not engaged in business in the traditional sense of the word. However, this is no longer required because the Supreme Court in *Toibb v. Radloff* expressly rejected the argument that petitioners for Chapter 11 relief must be engaged in business stating, "[t]he plain language of the Bankruptcy Code permits individual debtors not engaged in business to file for relief under Chapter 11." [6]

### B. Bad faith

The parties do not dispute that there is a good faith requirement for the commencement of a bankruptcy case. This good faith requirement has been discussed by at least four Fifth Circuit cases: *In re Briscoe Enterprises* [7], *In re Elmwood Development Co.* [8], *In re Humble Place Joint Venture,* [9] and *In re Little Creek Development Co.* [10]

The first three cases are of little assistance in determining whether the debtors in this case have filed in good faith. *Briscoe Enterprises* involved a single asset apartment complex in which the Fifth Circuit affirmed the bankruptcy court's confirmation of a plan that was found to have been filed in good faith. In *Elmwood Development,* the Fifth Circuit affirmed the dismissal of a second bankruptcy case where the debtor had previously filed and settled with a major creditor. Finally, in *Humble,* the Fifth Circuit affirmed the dismissal of a one-asset real estate development as not having been filed in good faith. The court pointed out that there was no ongoing business because there had been virtually no sales of lots in a suburb of Houston for four years before the filing, and

that the real goal of the filing was to obtain relief from personal guarantees made by the investors to a creditor.

■ *Little Creek,* the genesis of Fifth Circuit case law on good faith filings, came up in bankruptcy court on a motion to lift stay filed by a secured creditor to foreclose on the debtor's single asset—two parcels of undeveloped real estate in a suburb of Dallas. The bankruptcy court dismissed the case as a bad faith filing. The Fifth Circuit reversed and remanded, finding that the record was insufficiently developed to justify the bankruptcy court's conclusion. Judge Edith Jones held that findings of lack of good faith, whether arising under Section 362(d) or 1112(b), are based on a conglomerate of factors rather than on any single datum. The opinion set forth several factors for the bankruptcy court to consider on remand. These nonexclusive factors, as listed in separate numerical fashion from HBC's brief, are as follows:

1. The debtor has one asset, such as a tract of undeveloped or developed real property.

2. The secured creditors' liens encumber this tract.

3. There are generally no employees except for the principals, little, or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments.

4. Typically, there are only a few, if any, unsecured creditors whose claims are relatively small.

5. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a standstill in state court litigation.

6. Bankruptcy offers the only possibility of forestalling loss of the property.

---

**6.** 501 U.S. 157, 166, 111 S.Ct. 2197, 2202, 115 L.Ed.2d 145 (1991).

**7.** 994 F.2d 1160 (5th Cir.1993).

**8.** 964 F.2d 508 (5th Cir.1992).

**9.** 936 F.2d 814 (5th Cir.1991).

**10.** 779 F.2d 1068 (5th Cir.1986).

7. There are sometimes allegations of wrongdoing by the debtor or its principals.
8. The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eye of foreclosure to isolate the insolvent property and its creditors, exemplifies bad faith cases.[11]

Application of the eight factors from *Little Creek* indicates that HBC has failed to show bad faith sufficient to justify dismissal of these cases under 11 U.S.C. § 1112(b).

1. *The debtor has one-asset.*

HBC argues that each of the four debtors has only one asset—the stock of HBC. The debtors concede that the stock is the major asset but disagree that these are one-asset cases. The debtors pointed out in oral argument that Mrs. Voisin, the president of HBC, has $250,000 in cash, $115,000 in a money market fund, and $43.000 in stock in a New Orleans bank, all of which is in addition to her 12.9% ownership of the stock of HBC.

Even if the court were to accept HBC's argument that these are single asset cases as to the other three petitions that would not be determinative of the first criterion. The court must look at the nature of the asset that HBC claims the debtors own. Judge Jones recognized in the *Humble* case that not every one-asset real estate venture is doomed to failure. Although this "one-asset" does not fall within the illustrative list itemized by Judge Jones in the *Humble* case [12], it is one that seems likely to be undervalued or at least one whose true market value would not be realized by the quickly held foreclosure sale urged by HBC. Thus, similar to the prior sale of Mr. Carl Bourg's stock on October 22, 1997, HBC would likely be the only bidder at a sheriff's sale for the debtors' stock.[13]

2. *The secured creditors' liens encumber the tract.*

This is not a simple test to apply in this case. It is clear that HBC has seized the stock of the debtors to sell at a sheriff's sale to satisfy the $5.8 million judgment. Thus a lien does encumber what is arguably the sole asset—the stock in HBC, but does not encumber the tract—the underlying asset consisting of the 14,000 acres of primarily mineral property that belong to HBC.

3. *No employees, little or no cash flow, and no available sources of income to sustain a plan of reorganization.*

A part of this standard is satisfied as it does not appear that any of the debtors have any employees. Also, they do not have any cash flow because the state court judgment prohibited the declaration or paying of any dividends of HBC—the primary source of income for all of the four debtors.

There are, however, sources of "income" (i.e. principal) to sustain a plan of reorganization.

The nascent plan of the debtors is to get a proper evaluation of their HBC stock, and then either sell the stock or borrow enough money on the security of the stock to pay off in full the judgment in favor of HBC. That certainly does not appear impossible or even highly improbable at this stage. Whether it will culminate in any feasible plan that can be confirmed in a reasonable amount of time is dependent upon several factors which the court cannot and need decide at this time.

4. *There are only a few, if any, unsecured creditors whose claims are relatively small.*

That is certainly true in this case as shown by the debtors' schedules.

5. *The property has been posted for foreclosure or the debtor and a creditor are at a standstill in state court litigation.*

This factor appears to be satisfied even though the debtors point out that the state court litigation is over, and that they are not trying to relitigate the derivative stockholder

---

11. Pl. 58, at 4–5.

12. *In re Humble Place Joint Venture,* 936 F.2d at 818.

13. *Supra,* at 2.

suit, but instead are simply trying to avoid a forced sale of their stock under the writ of execution issued in the state court.

6. *Bankruptcy is the only possibility of forestalling the loss of the property.*

Obviously, this standard is met because the sheriff had seized and intended to sell all of the stock of the four debtors when the petition was filed and the automatic stay stopped execution on the judgment.

7. *Allegations of wrongdoing by the debtor or its principals.*

HBC argues that there were substantial wrongdoings by the judgment-debtors as reflected by the judgment in the stockholder's derivative suit, and that these wrongdoings involving fraud and breach of fiduciary duty preclude dischargeability of the judgment.

Debtors argue that the alleged wrongdoings are not a relevant factor at this time because (a) the damages for the wrongdoings are all included in the judgment, (b) they are not trying to relitigate the judgment, but instead seek only a means to orderly pay the judgment, and (c) whether the alleged fraud and breaches of fiduciary duty make the judgment nondischargeable is a question that must be reached at a later date if the judgment is not paid in full by the plan, which will provide for orderly disposition of their stock.

8. *The "new debtor syndrome".*

This has no applicability here. The debtors have all owned the stock of HBC as individuals, having inherited it years ago. The corporation itself has been in business for many years.

9. *Summary of the Little Creek factors.*

■ Considering the totality of the circumstances, the court is convinced that the four petitions of the debtors were filed in good faith and not for any purpose forbidden

by law. At a hearing on February 20, 1998, the court refused to extend the exclusivity period for the debtors to file a plan because HBC indicated it was ready and willing to file a plan itself.[14] The court did, however, extend the time period for filing plans until April 21, 1998.[15] Thus, there is likely to be a plan (or plans) filed by April 21, 1998. The court will promptly schedule hearings on the disclosure statements and plans, so there will no undue delay in determining whether a feasible plan of reorganization can be confirmed.

C. *Requirement of an affirmative vote by an impaired class.*

HBC argues that proceeding to confirmation is futile because the debtors have no creditors other than HBC so that there is no class of creditors to vote to accept the plan as required by 11 U.S.C. § 1129(a)(10). That section provides:

> *If a class of claims is impaired under the plan,* at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider. [emphasis added].

HBC's argument results from a misreading of Section 1129(a)(10). The section requires an affirmative vote only when a class of claims is impaired. Debtors argue that they plan to pay the HBC judgment in full so that HBC will not be impaired.

■ Even if HBC is somehow an impaired creditor, its avowed opposition at the outset is not a basis for dismissal.[16] Even adamant opposition to a plan of reorganization is sometimes removed or satisfied by the negotiations that are generally found in confirmation of a plan. In addition, HBC has the right to, and presumably will, file a plan. The court is not convinced that HBC's Section 1129 argument is properly presented on this motion to dismiss.

---

14. Pl. 94.

15. *Id.*

16. *See In re Zahniser,* 58 B.R. 530, 537 (Bankr. D.Col.1986) and *In re Karl A. Neise, Inc.,* 16 B.R.

602, 603–04 (Bankr.S.D.Fla.1981) (Holding that statement of opposition by creditors at the outset of a rehabilitation case is not dispositive of a motion to dismiss because a plan may be confirmed notwithstanding such opposition).

### III. *Conclusion*

This case presents some unique and complicated questions—including how the debtors' stock is to be valued, and how much of the stock will have to be sold/surrendered to satisfy the judgment in favor of HBC. These questions cannot and need not be answered at this early stage of proceeding on a motion to dismiss and without any evidentiary record.