**In re Molly Jane COLEMAN, Debtor.**

**No. 7–01–01199–WSB–11.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

March 21, 2002.

John M. Lamie, Browning, Lamie & Gifford, Abingdon, VA, for Debtor.

Mark L. Esposito, Penn, Stuart & Eskridge, Bristol, VA, for Community Trust Bank.

### MEMORANDUM OPINION

WILLIAM F. STONE, Jr., Bankruptcy Judge.

This Chapter 11 case filed by Molly Jane Coleman ("Mrs. Coleman") raises a very

fundamental issue as to whether the principal objective she seeks is one which is in keeping with the remedial purposes of the bankruptcy system or in fact constitutes an abuse of that system. That objective is to use the powers of a bankruptcy trustee accorded to her as a debtor-in-possession to attempt to avoid two deeds of trust which she freely granted and which outside of bankruptcy she would have no legal status to challenge. Indeed, to be successful in her effort, she must undertake in her capacity as debtor-in-possession to prove, among other necessary elements, that individually she willingly participated in a transaction which she then knew was intended to hinder, delay or defraud her just creditor. Not surprisingly, Mrs. Coleman and the secured creditor she proposes to make the sacrificial goat which will provide the feast for her other creditors and, not incidentally, herself have radically different perceptions of the propriety of what she is trying to do. Their conflict presents the Court with a most interesting and difficult problem involving the role of a Chapter 11 debtor serving as a debtor-in-possession having the powers of a bankruptcy trustee to be exercised in theory for the benefit of her general creditors but which have the potential to be used for her own substantial personal benefit. The precise issues now before the Court are the Motion to Dismiss and Objection to Confirmation filed on behalf of Community Trust Bank ("the Bank"), which is the beneficiary of the deeds of trust sought to be avoided in this case.

## FINDINGS OF FACT

The critical facts with few exceptions are not in dispute. Mrs. Coleman is the wife of Roger Coleman ("Coleman"), whose own Chapter 11 case preceded hers in this Court. He was involved in the coal business, apparently quite successfully for some period of time. Leading up to the time of his own filing in this Court, Mr.

Coleman was a partner with Mr. Darrell Cook ("Cook"), who likewise filed his own Chapter 11 case in this Court. Coleman and Cook were involved in several companies and one of them had a more than $1 million dollar profit in 1993 which was taxed personally to the owners because of a "Subchapter S" tax election. Unfortunately this profit was not passed through to the owners but was largely if not entirely used to fund operations in one or more of their other companies. The result was that the Colemans were saddled with a huge tax liability which they lacked the cash to pay. Mr. Coleman and Mr. Cook had obtained financing for their businesses from Pikeville National Bank and Trust Co., now known as Community Trust Bank ("the Bank"). Although the Bank had a security interest in the operating assets of the coal companies, Coleman and Cook wanted its approval to extend the term of the financing and to move certain of the assets to another mining location. By 1995 the Colemans were apparently concerned about collection activity on the part of the Internal Revenue Service (the IRS) against not only their valuable residence and farm located in Buchanan County, Virginia but also certain property located in Sullivan County, Tennessee on South Holston Lake. Upon the advice of legal counsel, they granted on January 18, 1995 two deeds of trust upon the properties in question to secure to the Bank the repayment of Mr. Coleman's liability upon the outstanding business loans. Mrs. Coleman was not personally liable to the Bank on these loans and no new money was advanced when the deeds of trust were granted. It does not appear that she assumed personal liability to the Bank upon these obligations at that time or subsequently. Mrs. Coleman now claims that she signed these deeds of trust not to provide any inducement to the Bank to continue to work with her husband and

Mr. Cook upon their business loans, but to keep the properties out of the hands of the IRS.

Although the Bank, according to its account of the matter, did continue to work with Coleman and Cook, the coal businesses continued to have such problems that they ultimately failed, thereby propelling Mr. Coleman and Mr. Cook to file personal petitions in this Court. In his case Mr. Coleman as debtor-in-possession filed an adversary proceeding which sought to avoid the 1995 deeds of trust which he and his wife had granted to the Bank. At a late stage of that proceeding and after encountering certain legal problems raised by the Bank's vigorous defense to that proceeding, Mr. Coleman filed a motion to join his wife, who was not then a debtor in any bankruptcy case, as a party. This motion was contested by the Bank and was denied by this Court by an order entered August 2, 2002. On the same date the Court granted the Bank's motion to dismiss that proceeding on a Statute of Limitations basis because it had not been commenced within two years of the beginning of the case. On October 6, 2000 Mr. Coleman's Chapter 11 case was converted upon his own motion to Chapter 7. He obtained a discharge on January 9, 2001 and the case was closed on February 14, 2001. Meanwhile the Bank proceeded to make arrangements to enforce its deeds of trust against the properties owned jointly by Mr. and Mrs. Coleman. To that end it hired a very prominent and successful auction company to sell the properties on the same day at highly advertised and promoted sales to take place several hours apart. The Bank incurred substantial expenses to arrange for and promote these sales, which were set to take place on March 23, 2001. The day prior to the scheduled sale date Mrs. Coleman filed her Chapter 11 petition in this Court to "save" her home and attempt to set aside the 1995 deeds of trust to the Bank. Within one week she filed the present adversary proceeding challenging the deeds of trust on the ground that they had been given simply to hinder or delay the collection efforts of the IRS and therefore were voidable under applicable provisions of Virginia and Tennessee law as having been given in fraud of the rights of such creditor. This was not a claim which Mrs. Coleman had the power to advance in her individual capacity under state law because she had been a party to the transaction and any challenge had to be mounted by the creditor or creditors prejudiced by the granting of the deeds of trust. In her capacity as debtor-in-possession, however, Mrs. Coleman could exercise the powers of a bankruptcy trustee to assert rights possessed by creditors under state law to challenge improper transfers by virtue of 11 U.S.C. § 544(b). At this point it is interesting to note that, although the IRS was aware by reason of the adversary proceeding brought in Mr. Coleman's case of the allegations made by the Colemans concerning their supposed motivation for granting the 1995 deeds of trust, it never undertook any challenge of them under state law at any time prior to the scheduled foreclosure sale or Mrs. Coleman's own case filing. Neither has the IRS made any apparent effort in the present case to support Mrs. Coleman's attempt as debtor-in-possession to assert its purported state law rights against the deeds of trust even though it is a party to the adversary proceeding filed on behalf of Mrs. Coleman.

In her bankruptcy petition Mrs. Coleman listed four creditors: (1) the Bank as a secured creditor in the amount of $900,000, (2) the Internal Revenue Service as an unsecured priority creditor in the amount of $260,000, (3) Bank of America as an unsecured creditor in the amount of $7,877.10 and (4) Galen Med, Inc., d/b/a Clinch Valley Medical Center, as a joint unsecured creditor in the amount of

$32,000. She further indicated the value of her Virginia and Tennessee properties, both owned jointly with her husband, as being worth in the aggregate $745,000. A review of the case file indicates that the IRS has filed a proof of claim for 1993 income tax penalties and interest in the total sum of $571,569.63 of which $15,370 has been characterized as a secured claim and $556,199.63 has been designated as an unsecured general claim. Galen Med., Inc. has filed five proofs of claim upon the account of Mr. and Mrs. Coleman for medical services during the period March 19— May 31, 1998 in the total sum of $22,559.34. Although the Bank of America has not filed a proof of claim in this case so far, the Debtor did introduce into evidence a copy of the credit card statement dated January 22, 2001 in the amount of $7,877.10 which reflected that it was for a joint account with Mr. Coleman.

In 1998 Congress amended the Tax Code (Title 26) to permit retroactive relief to so-called "innocent spouses" from tax liability with their presumably non-innocent spouses resulting from their filing of joint tax returns. Mrs. Coleman engaged tax counsel to present a petition on her behalf for innocent spouse equitable relief pursuant to 26 U.S.C. § 6015(f) from her tax liabilities to the IRS. Relief was apparently obtained as to several years in dispute but at least not initially with respect to the 1993 tax year. Tax counsel is still working on Mrs. Coleman's behalf, however, and continues to pursue on administrative appeal of her claim for relief as to the 1993 year. Even it that appeal is unsuccessful, the Tax Court has ruled that it has jurisdiction to review denial of relief pursuant to § 6015(f). *Fernandez v. Commissioner,* 114 TC No. 21, 2000 WL 565108 (2000). It does not appear that either of Mrs. Coleman's other creditors was such at the time the 1995 deeds of trust were granted. If she is successful in her adversary proceeding against the Bank, she proposes to sell in an orderly fashion so much of her property as is necessary to pay her creditors in full. If her administrative appeal of the initial denial of "innocent spouse" relief is ultimately successful, she proposes to sell the Tennessee property if necessary to pay her general unsecured creditors in full and keep the Virginia property free and clear of the 1995 deeds of trust.

At the confirmation hearing on February 12, 2002, the Debtor introduced as Exhibit # 1 an undated IRS form notification that her claim for relief pursuant to 11 U.S.C. § 6015(f) had been denied. The attachment contained a statement of the IRS's conclusion that "based on the facts and circumstances presented, it would not be inequitable to hold you liable for the tax attributable to the underpayment." It also referred to "documentation" which had been "provided in support of a $400,000.00 payment not appropriately credited" and that the IRS had forwarded the "documentation with a referral to our Taxpayer Advocates Office." No testimony was offered as to what had occurred as a result of this referral. While Mrs. Coleman testified that she was optimistic about her appeal to the IRS, no testimony or other evidence from her special tax counsel was presented as to the current status of Mrs. Coleman's 1993 tax liability dispute. At this time the IRS's proof of claim dated August 16, 2001 for the 1993 tax liability has not been amended, withdrawn or objected to. At the confirmation hearing only two ballots representing votes cast on the Debtor's proposed Plan were filed, one by Galen Med, Inc. voting in favor and the other by the Bank voting against. Perhaps surprisingly, the IRS did not choose to cast a ballot.

One factual area in which there is some dispute between the parties relates to the circumstances under which the 1995 deeds

of trust were granted to the Bank. Mrs. Coleman contends, as previously noted, that she signed them to protect the properties from IRS collection efforts. The IRS's proof of claim states that it filed a notice of tax lien in Buchanan County on February 13, 1995, less than a month after the signing and recordation of the Virginia deed of trust. For its part the Bank admits that it was aware that Mr. Coleman had tax liabilities and, according to its answers to Interrogatories propounded to it in Mrs. Coleman's adversary proceeding against it, of Mr. Coleman's "conviction for income tax evasion." It further stated, however, that the Bank's loan officer dealing with the account was unaware of any IRS claims against Mrs. Coleman prior to January 18, 1995, the date of the deeds of trust in dispute. Furthermore, the Bank filed a motion for summary judgment in the pending adversary proceeding containing, among other exhibits, a copy of a purported loan file memo dated December 9, 1994 concerning a meeting involving Mr. Coleman, Mr. Cook, their attorney, the Bank's attorney, and Steve Belcher, the Bank's loan officer. The memo does refer to the large 1993 tax liability but in the context of the Chapter 11 filing of Big Fist Coal company, Inc., which it was believed would allow a CPA firm to consolidate all of the companies with Big Fist so that "they would be able to utilize the net operating loss of Big Fist and Raider to offset prior taxes due." The memo also referred to a recommendation made by the Bank's attorney to obtain "collateralization of the unsecured loans", to which "all parties were agreeable", but no reference was made to any personal real estate assets of either Coleman or Cook. In Mrs. Coleman's opposition to the Bank's motion for summary judgment, she "disputes" Belcher's recollection that the deeds of trust were given as consideration "for allowing Big Fist Coal Company to move coal mining equipment." Furthermore, she alleges in her Complaint the Bank "knew or should have known that the conveyance of said property to the bank was done with the actual intent to delay, hinder or defraud the Internal Revenue Service from collecting the joint tax liability due and owing from Roger Coleman and Janis Coleman, and any other creditors." [paragraph # 10] This issue was not addressed at the confirmation hearing and the Court is not able to resolve it at this time.

The Debtor has very candidly stated in the Disclosure Statement accompanying her proposed Chapter 11 Plan that she filed this case "in an effort to save her home . . . ." Avoiding the Bank's deeds of trust is the only feasible way that Mrs. Coleman can achieve this purpose. Schedule I of her petition reflects total income of $825.00 from rent from 3 houses. Schedule J of the petition reflects total monthly average expenses of $882.00, which of course exceeded her gross monthly income at the beginning of the case. Even though this income has increased somewhat, a substantial portion of it is received at her husband's sufferance from property he separately owns. In any case it is clearly insufficient to fund any repayment plan to creditors. Nothing is included in the expenses for real estate taxes on the properties which are listed in the petition and Mrs. Coleman indicated in her testimony that the taxes were not paid in 2001.

## CONCLUSIONS OF LAW

This court has jurisdiction to decide the issues before it by reason of 28 U.S.C. § 1334(a) and § 157(a). Questions of dismissal of a pending bankruptcy case and confirmation of a proposed Chapter 11 Plan are "core proceedings" pursuant to 28 U.S.C. § 157(b)(2)(A) and (L).

## I. *MOTION TO DISMISS*

■ This Motion raises distinct but inextricably interrelated issues as to the ap-

propriate purposes of a Chapter 11 reorganization proceeding and the Debtor's "good faith" in seeking to utilize the processes of the Bankruptcy Court for unusual purposes. It is generally conceded that the most common and generally accepted purpose of a Chapter 11 case is to reorganize and rehabilitate a failing business enterprise in a manner which protects the rights of the creditors but in a manner which preserves the benefits to the wide community of interest represented by the business. *See generally* 7 Collier on Bankruptcy § 1100.01 at pages 1100–3 thru 6 (15th edition revised). In this case there is no business whatsoever to resuscitate. There are no jobs to preserve or customers to consider. The Debtor does not have sufficient income to pay both her expenses of living and the real estate taxes on the properties constituting her meaningful assets, much less satisfy her debts. Her acknowledged purposes are (1) to attempt to set aside two deeds of trust which she freely granted to her husband's business lender upon the claim that she and her husband intended thereby to hinder, delay or defraud their joint creditor(s), (2) to continue to seek relief as an "innocent spouse" from her portion of the liability to the IRS resulting from her husband's business activities, activities which it is clear have provided a very desirable standard of living to them both, (3) to sell off such portion of her property as may be necessary to pay her resulting liability, if any, to the IRS and her other creditors which are owed only a small fraction of the Bank's and IRS's claims, and (4) if her efforts are crowned with complete success, to then keep and enjoy the bulk of her property after satisfying relatively small claims aggregating about $30,000 free and clear of the Bank's deficiency claim upon the business loans of approximately $900,000. This effort strikes the Court as somewhat audacious, and no doubt strikes the Bank

as outrageous, but that doesn't mean that in bankruptcy it is impermissible.

The Court has found particularly helpful in approaching the issues presented in this case the Fourth Circuit Court of Appeals opinion in the case of *Carolin Corp. v. Miller (In re Carolin Corp.)*, 886 F.2d 693 (4th Cir.1989). There the Court states as follows concerning the issue of dismissing a bankruptcy case because of the debtor's bad faith:

> We agree with the other courts that have so held and concluded that a good faith filing requirement is implicit in several specific provisions of the bankruptcy code, interpreted in light of established policy considerations underlying the code's provision of bankruptcy protection. As the Fifth Circuit recently recognized, a good faith requirement prevents abuse of the bankruptcy process by *debtors whose overriding motive is to delay creditors without benefiting them in any way or to achieve reprehensible purposes.* Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshaling and turnover of assets) available only to those debtors and creditors with "clean hands." [emphasis added] *In re Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir.1986).

886 F.2d at 698. The Court then went on to hold that in order to grant a motion to dismiss a Chapter 11 case at an early stage both "objective futility" and "subjective bad faith" must be clearly evident to the bankruptcy court.

> This, we think, is the only sufficiently stringent test of justification for threshold denials of Chapter 11 relief. Such a test obviously contemplates that it is better to risk proceeding with a wrongly-motivated invocation of Chapter 11

protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation. Just as obviously, it contemplates that it is better to risk the wastefulness of a probably futile but good faith effort to reorganize than it is to risk error in prejudging its futility at the threshold. We believe that such a stringent test is necessary to accommodate the various and conflicting interests of debtors, creditors, and the courts that are at stake in deciding whether to deny threshold access to Chapter 11 proceedings for want of good faith in filing. 886 F.2d at 701. In the case before this Court, the motion to dismiss is not being considered at the beginning of the case but at the hearing upon confirmation of the Debtor's proposed Chapter 11 Plan. Subsequent to the Fourth Circuit Court's decision in *Carolin* the Supreme Court provided further guidance in this area and opened the gate wider to unusual Chapter 11 cases with its decision in *Toibb v. Radloff*, 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). There the Court held that the statute's "plain language" permitted an individual with no ongoing business to avail himself of the advantages of Chapter 11 of the Bankruptcy Code. 501 U.S. at 166, 111 S.Ct. 2197. Mr. Toibb, the debtor in that case, was actually unemployed and had filed a petition under Chapter 7 of the Code. His only nonexempt assets were 24% of the shares of a closely held corporation and a possible claim against his former business associates. After the corporation's Board of Directors offered to buy the debtor's shares from the Trustee for $25,000, he filed a motion to convert his case to one under Chapter 11 and this motion was granted by the Bankruptcy Court. Thereafter, however, the Court ruled that Chapter 11 was not available to Mr. Toibb because he had no business to reorganize. This ruling was affirmed by the District Court and in turn by the Eighth Circuit but was reversed by the Supreme Court, which held that the Court would not infer a requirement that a Chapter 11 debtor be engaged in business when Congress had not provided for one in the statutory language. The third "leg" of the "3 legged stool" which the Court believes supports its decision in this case is the language of 11 U.S.C. § 1129(a)(11), which expressly permits a Chapter 11 Plan to be one of "liquidation", which is the essence of the plan proposed by Mrs. Coleman. *See also* 11 U.S.C. § 1123(a)(5) and (b)(4) (plan may provide for sale of all or substantially all of property of the estate and distribution of proceeds); 1 Queenan, Hendel & Hillinger, Chapter 11 Theory and Practice: A Guide to Reorganization § 6.19 (LRP Publications, 1994).

The Court has reviewed the decisions cited by the Bank. While they offer language which is helpful to the Bank's position that this case should be dismissed, for the most part they really do not deal with situations which are closely akin to the facts of the present case. Most of these decisions deal with the problems of "serial filers" and/or new entities created for the express purpose of filing a bankruptcy case, neither of which is true with regard to Mrs. Coleman's filing in this Court. *Carolin, supra,* ("new debtor syndrome", 886 F.2d at 696); *In re Wharton v. I.R.S.,* 213 B.R. 464 (E.D.Va.1997) (Ch. 7 filing followed by two identical Chapter 11 filings, IRS was sole creditor); *In re Weaver,* 222 B.R. 521 (Bankr.E.D.Va.1998)("serial filing syndrome", 222 B.R. at 524). The two other decisions cited by Bank's counsel are also dissimilar. *In re Kent,* 145 B.R. 840 (Bankr.E.D.Va.1991) dealt with a Chapter 11 debtor's proposal to sell real estate to a famous artist for cash and paintings to be named later. Judge Tice quite understandably held that such a plan

did not adequately protect the interests of the objecting creditors and was not confirmable over their objections, thereby rendering reorganization objectively futile and justifying dismissal of the case. In a like vein the debtor's Chapter 11 petition was dismissed in *In re Mill Place Limited Partnership*, 94 B.R. 139 (Bankr.Minn. 1988), where the debtor owned only an office building and adjoining lot used for parking. The court characterized the case as "essentially ... a two-party dispute" between the debtor and its mortgagee in which confirmation of a plan over the latter's objection was perceived to be "highly unlikely". 94 B.R. at 142–3. Accordingly, the Court viewed the case as an exercise in futility because it would not lead to a confirmable plan and therefore dismissed it. While this Court was initially of the opinion that the decision in the case of *In the Matter of Century City, Inc.*, 8 B.R. 25 (Bankr.N.J.1980) was akin to the facts of this adversary proceeding, after reflection the Court agrees with the arguments of Debtor's counsel that it also is distinguishable. There the Debtor brought action to attempt to recover property which it had freely transferred prior to bankruptcy in connection with the settlement of a rather complicated dispute. The Bankruptcy Court dismissed the Chapter 11 petition on the ground that after making "full use of its benefits under the Restated Agreement [i.e., the settlement]" for a period of six months, the debtor had filed its case "not to rehabilitate a financially distressed corporate debtor, but rather to utilize such proceeding as a vehicle to recapture the parcels of property transferred pursuant to the Restated Agreement," which the Court concluded constituted "a misuse of the Bankruptcy Code and the processes of this Court." 8 B.R. at 33. The Court's decision to dismiss, however, was based in substantial part on its finding that the debtor had an "absence of tangible assets and creditors". 8 B.R. at 33.

While the Court is satisfied that Mrs. Coleman's intent in filing her Chapter 11 case was to try to "save" her residence property for her own benefit rather than for her creditors, it nevertheless concludes that such a motivation does not preclude her from seeking the jurisdiction of this Court. Certainly it would be unusual for any debtor to file a bankruptcy case unless he, she or it expected to derive some benefit from doing so. While the benefit she most hopes to obtain, *i.e.*, saving her home for her own benefit, would be abusive if that were the sole result of her efforts, that is not the case here. The Court has concluded that the Motion to Dismiss should be denied for the following reasons:

1. First and foremost, while Mrs. Coleman has obtained a significant personal benefit even at this point by staying the Bank's foreclosure sales and thereby remaining in possession and enjoyment of the subject properties and may potentially gain even a much larger benefit if she prevails in her adversary proceeding against the Bank, particularly if her appeal of her tax liability is ultimately successful, she does have actual creditors which would benefit also if the deeds of trust are set aside. Although the uncontested debts are relatively small in comparison to the claims of the Bank and the IRS, they do total more than $30,000 and are not simply nominal in amount.

2. The Court confesses to some skepticism about the ability of Mrs. Coleman ultimately to prevail upon the merits of her adversary proceeding against the Bank's deeds of trust because even if her alleged motivation for signing the deeds of trust is accepted, it is not necessarily inconsistent with the Bank's efforts to obtain additional collateral for its own purposes, including security for unsecured obligations and consideration for granting forbearances to Mr. Coleman and Mr. Cole.

Even so, the Court also believes that the Debtor brings the adversary proceeding with an actual belief that it does have merit. Furthermore, while it may appear to the Court at this point that Mrs. Coleman has an uphill battle to prevail, the adversary proceeding does not appear frivolous. By no means is it impossible or even highly unlikely that Mrs. Coleman might be able to present evidence that the Bank accepted the deeds of trust with knowledge of the IRS's claims against both Colemans and with the intent simply of accommodating the Colemans' desire to hinder IRS collection efforts against their properties. If a trustee were appointed in this case and if he or she after investigation determined that the adversary proceeding has some reasonable merit, he or she could and presumably would continue the effort begun by Mrs. Coleman simply because of the considerable benefits to general creditors if the challenge were successful without regard to what personal benefits might accrue to the Debtor as a collateral result.

3. If Mrs. Coleman had filed a Chapter 7 petition in this Court and had been able to convince the Chapter 7 Trustee that the deeds of trust constituted fraudulent conveyances under Virginia and Tennessee law, a result very similar to that sought by the Debtor as a result of her efforts here might have followed. Specifically, the Trustee could have pursued a challenge to the deeds of trust for the benefit of the general creditors. The Debtor would have been free to object to the IRS's proof of claim and continue her efforts to obtain "innocent spouse" relief. The Trustee, if successful against the Bank, would have had no reason, and very likely not even the authority, to seek to sell more property than might be necessary to satisfy the creditors and the administrative expenses of the case. Any remaining property not necessary to pay creditors and expenses would revert to the Debtor at the closing

of the case. Such a result would clearly not be an abuse of the purposes of the bankruptcy system, but rather in fulfillment of them. In somewhat different terms, if the Bank has no right under state law as to actions brought by the Colemans' creditors to retain the benefits of the 1995 deeds of trust, its interests must be subordinated to Mr. and Mrs. Coleman's joint creditors with respect to the Colemans' jointly-owned property in this bankruptcy case.

## II. *OBJECTION TO PLAN CONFIRMATION*

■ While it is clear that the Debtor has the burden of proof by a preponderance of the evidence on the issue of her "good faith" in seeking confirmation of a proposed Chapter 11 plan, *see* 11 U.S.C. § 1129(a)(3); 7 Collier on Bankruptcy § 1129.02[4] at pages 1129–22 and –23 (15th edition revised), the Court believes that she has done so in the context of her belief in the merit of her claims against the 1995 deeds of trust, despite her evident self-interest in making such a challenge. She testified more than once that the attorney working with her husband and Mr. Cook in trying to rehabilitate their companies told her at the time that the conveyances could be overturned later because they were being made with intent to hinder the collection efforts of the IRS against the Colemans' properties. If the adversary proceeding against the Bank and its deeds of trust succeeds, the Bank really will have no rights in this case to be protected other than perhaps for claims for taxes, insurance, etc., advanced by it for the protection of the property under the terms of the deeds of trust. That is to say, it apparently has no claims as a creditor of Mrs. Coleman except to the extent that it might have obtained any such rights under the deeds of trust. Accordingly, the Court believes that the entire case rises or

falls on the result of the adversary proceeding against the Bank. If such proceeding is successful, there is no reason not to confirm the Chapter 11 Plan as it would pay Mrs. Coleman's other creditors in full. The Bank's Objection to Confirmation would be moot as it would have no standing to object. The only other creditor which has taken the trouble to cast a ballot has voted in favor of the Plan. On the other hand, if that proceeding is determined adversely to Mrs. Coleman, the Bank should not be further delayed in realizing on its collateral, which, according to Mrs. Coleman's own petition and evidence, is worth less than the Bank's claim. In such a situation, with the properties being subject to delinquent and currently accruing real estate taxes having priority over the liens of the deeds of trust, continued delay in selling such properties results in prejudice to the Bank and without benefit to anyone other than the Colemans personally. Accordingly, the Court will confirm the Plan subject to the right of the Bank to obtain relief from the stay pursuant to 11 U.S.C. § 362(d) if it is determined to be entitled to retain the benefit of the deeds of trust it obtained from the Colemans in early 1995. Such relief would presumably moot the confirmed plan except to the extent of any excess sale proceedings resulting from foreclosure, apparently a very unlikely prospect.

### DECISION

For the reasons stated above, the Court by separate order will deny the Bank's Motion to Dismiss and Objection to Confirmation. It will confirm the Plan, subject, however, to the Bank's right to obtain relief from the stay in the event it prevails in the pending adversary proceeding brought by the Debtor. In such a situation the Court will then entertain a motion to dismiss the case or convert it to Chapter 7 as may appear to be warranted at that time. Further, the Court will attempt to schedule a full trial upon the adversary proceeding at the earliest reasonable date.