PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: MOLLY JANE COLEMAN,
*Debtor.*

---

ROGER COLEMAN,
*Plaintiff,*

and

MOLLY JANE COLEMAN,
*Debtor-Appellant,*

v.

COMMUNITY TRUST BANK, d/b/a
Pikeville National Bank & Trust,
*Defendant-Appellee,*

and

INTERNAL REVENUE SERVICE,
*Claimant,*

and

UNITED STATES TRUSTEE,
*Trustee.*

No. 03-2328

In Re: MOLLY JANE COLEMAN,
                              *Debtor.*

ROGER COLEMAN,
                              *Plaintiff,*

              and

MOLLY JANE COLEMAN,
                    *Debtor-Appellee,*

              v.

COMMUNITY TRUST BANK, d/b/a
Pikeville National Bank & Trust,
                    *Defendant-Appellant,*

              and

INTERNAL REVENUE SERVICE,
                              *Claimant,*

              and

UNITED STATES TRUSTEE,
                              *Trustee.*

No. 03-2347

Appeals from the United States District Court
for the Western District of Virginia, at Abingdon and Roanoke.
Glen M. Williams, Senior District Judge.
(CA-03-2-1; CA-03-3-1; BK-01-47-7-WSB; BK-01-1199-7-WSB)

Argued: September 22, 2005

Decided: October 20, 2005

Before WILKINS, Chief Judge, LUTTIG, Circuit Judge,
and James C. DEVER, III, United States District Judge
for the Eastern District of North Carolina, sitting by designation.

Affirmed in part, reversed in part, and remanded by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Luttig and Judge Dever joined.

---

**COUNSEL**

John Michel Lamie, BROWNING, LAMIE & GIFFORD, P.C., Abingdon, Virginia, for Appellant/Cross-Appellee. Mark Louis Esposito, PENN, STUART & ESKRIDGE, Bristol, Tennessee, for Appellee/Cross-Appellant.

---

**OPINION**

WILKINS, Chief Judge:

Molly Jane Coleman (Debtor) appeals and Community Trust Bank d/b/a Pikeville National Bank & Trust cross-appeals from a district court order affirming several bankruptcy orders arising from Debtor's Chapter 11 bankruptcy. We affirm in part, reverse in part, and remand for further proceedings.

I.

In 1995, Debtor's husband Roger Coleman and Darrell Cook were partners in several companies involved in coal mining (the Companies), each of which had petitioned for Chapter 11 bankruptcy. Mr. Coleman and Cook had obtained financing for the Companies from Pikeville National Bank, now known as Community Trust Bank (the Bank). Shortly after the Companies had filed their Chapter 11 petitions, Mr. Coleman, Cook, and counsel for the Companies met with representatives for the Bank. At that meeting, they discussed several matters, including the possibility of moving some mining equipment that secured certain of the Companies' debts and adjusting their payment schedule.

During the same time period, the Colemans were struggling with their inability to pay their 1993 income taxes. This problem arose

because of substantial income generated by one of the Companies in 1993. Because the business was organized as a Subchapter S corporation, the profits were taxed to the owners personally. *See Bufferd v. Comm'r*, 506 U.S. 523, 525 (1993). However, the Colemans did not have the funds to pay their 1993 taxes because the profits had been used largely to fund another of the Companies. As a result of their tax problems, the Colemans became concerned that they would lose their home.

Eventually the Colemans decided to offer their Virginia home and a Tennessee property (the Properties), both of which they owned as tenants by the entirety, as further collateral for the debts owed to the Bank. Thus, on January 18, 1995, the Colemans executed deeds of trust granting the Bank a security interest in the Properties. The IRS filed a tax lien on the Colemans' Virginia home shortly thereafter.

The Bank subsequently initiated foreclosure proceedings against the home. However, on March 22, 2001, the day before the planned foreclosure sale, Debtor filed a Chapter 11 bankruptcy petition. The petition asserted that the aggregate value of the Properties was $745,000 and that the Bank's secured claims against the Properties amounted to $900,000. The petition also listed unsecured claims by the IRS for $260,000; Galen Med, Inc., t/a Clinch Valley Medical Center for $32,000; and Bank of America for $7,877.10. The IRS filed a proof of claim in the amount of $571,569.63. And, Galen Med, Inc. filed proof of five claims totaling $22,559.34. Bank of America did not file a proof of claim. Debtor's petition listed the claims of the Bank and the IRS as disputed. The IRS claim was listed as disputed because Debtor had claimed she was innocent of joint and several liability under 26 U.S.C.A. § 6015(f) (West 2002).[1] When the petition was filed, Debtor's application for relief under § 6015(f) had been denied, but she had appealed that denial.

Shortly after filing for Chapter 11 relief, Debtor initiated an adversary proceeding against the Bank, the trustees named under deeds of trust, and the IRS. Debtor claimed that the deeds of trust that she and

---

[1]Section 6015(f) authorizes the Secretary of the Treasury to grant equitable relief from joint and several tax liability under certain circumstances.

her husband had given to the Bank were void as fraudulent conveyances under Virginia and Tennessee law because they represented the Colemans' improper attempt to hinder, delay, and defraud Debtor's creditors, including the IRS.[2] Thus, she sought to invoke her "strong arm" powers as a debtor in possession under 11 U.S.C.A. § 544 (West 2004) to set the deeds of trust aside. Under her proposed bankruptcy plan, if she were successful in avoiding the deeds of trust, she would sell the Properties as needed to pay her creditors and the administrative expenses of the estate.

On January 24, 2002, the Bank moved to dismiss Debtor's Chapter 11 petition on the ground that it was not filed in good faith. In this regard, the Bank maintained that the Chapter 11 filing was "nothing more than an attempt by the debtor to impermissibly and wrongfully clothe herself with the 'strong arm' powers of a debtor in possession or bankruptcy trustee and thereby gain a strategical and tactical advantage over the Bank and the IRS with respect to the claims of said creditors." J.A. 105.

The bankruptcy court subsequently confirmed Debtor's bankruptcy plan, subject to the outcome of the adversary proceeding. *See In re Coleman*, 275 B.R. 763, 771-72 (Bankr. W.D. Va. 2002). The court also denied the Bank's motion to dismiss, finding that Debtor's adversary proceeding was not frivolous, that Debtor's creditors would benefit from a successful prosecution of the adversary proceeding to set aside the deeds of trust, and that the relief Debtor sought under Chapter 11 was quite similar to that which she could have sought under Chapter 7. *See id.* at 770-71. The Bank moved for reconsideration of both rulings.

Following a trial on the adversary proceeding—as the Bank's reconsideration motion remained pending—the bankruptcy court determined that the deeds of trust were voidable fraudulent conveyances because they were motivated in part by the Colemans' desire to hinder the IRS from collecting the Colemans' back taxes and because the Bank's officer in charge of the loans was aware of that motive. *See Coleman v. Cmty. Trust Bank (In re Coleman)*, 285 B.R. 892, 905-09 (Bankr. W.D. Va. 2002). The court nevertheless ruled

---

[2]Debtor personally owed nothing to the Bank.

that the deeds of trust would be avoided only to the extent necessary to pay the claims and administrative expenses of the estate. *See id.* at 909-12. The deeds of trust thus would remain in effect to allow the Bank to recover any surplus. *See id.* at 912. The court explained that "this result most effectively upholds the policies and specific statutory provisions of the Bankruptcy Code and the laws of Virginia and Tennessee to avoid voluntary fraudulent transfers where the rights of third parties are concerned, but to uphold and enforce them as between the parties themselves." *Id.*

On the same day that the bankruptcy court resolved the adversary proceeding, it also denied the Bank's motion for reconsideration of the denial of the motion to dismiss. *See In re Coleman*, 286 B.R. 308, 309 (Bankr. W.D. Va. 2002). However, the court granted the reconsideration motion with regard to its earlier confirmation of Debtor's plan (for reasons that we will discuss below) and ordered Debtor to file an amended bankruptcy plan. *See id.* at 309-10.

The district court affirmed the rulings of the bankruptcy court on appeal. *See Coleman v. Cmty. Trust Bank (In re Coleman)*, 299 B.R. 780 (W.D. Va. 2003).

## II.

Debtor first argues that the bankruptcy court erred in ruling that her avoidance of the deeds of trust was effective only to the extent necessary to pay the creditors and administrative expenses of her estate. We agree.

We review de novo the decision of the district court, "effectively standing in its shoes to consider directly the findings of fact and conclusions of law by the bankruptcy court." *Cypher Chiropractic Ctr. v. Runski (In re Runski)*, 102 F.3d 744, 745 (4th Cir. 1996). Accordingly, "we review legal conclusions by the bankruptcy court de novo and may overturn its factual determinations only upon a showing of clear error." *Id.*

A ruling concerning the proper interpretation of a statute is a legal determination, which we review de novo. *See Commodity Futures*

*Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191 (4th Cir. 2002). Statutory interpretation necessarily begins with an analysis of the language of the statute. *See Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985). In analyzing statutory language, we must first "determine whether the language at issue has a plain and unambiguous meaning." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Our determination of whether a statute is ambiguous is guided "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341. If the language is plain and "the statutory scheme is coherent and consistent," we need not inquire further. *United States v. Ron Pair Enters.*, 489 U.S. 235, 240-41 (1989). In that situation, "the sole function of the courts is to enforce [the statute] according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917).

With certain exceptions not applicable in this case, a debtor-in-possession possesses all of the rights of a bankruptcy trustee.[3] *See* 11 U.S.C.A. § 1107(a) (West 2004). Bankruptcy Code § 544 authorizes a trustee to avoid liens and transfers under certain circumstances. As is relevant here, § 544(b)(1) specifically provides that a trustee "may avoid *any* transfer of an interest of the debtor in property or *any* obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C.A. § 544(b)(1) (emphasis added). Here, the bankruptcy court concluded that the deeds of trust at issue were voidable as required by the statute.[4] *See Coleman*, 285 B.R. at 908.

Debtor maintains that the plain language of § 544(b)(1) authorizing avoidance of "any" transfer that was voidable under applicable law

---

[3]Under Chapter 11 of the Bankruptcy Code, "a debtor in possession remains in possession of the pre-petition assets and administers them for the benefit of its creditors." *RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257, 260 n.2 (4th Cir. 2004).

[4]The Bank maintains on cross-appeal that the bankruptcy court erred in determining that Debtor proved that the deeds of trust were voidable under applicable law. For the reasons stated in the opinion of the bankruptcy court, we conclude that the bankruptcy court correctly resolved the legal questions relating to this issue and that its factual findings were not clearly erroneous. *See Coleman*, 285 B.R. at 905-09.

unqualifiedly allows her to avoid the deeds of trust here. Thus, she maintains that the bankruptcy court erred in limiting the extent to which she could avoid them.

The Bank argues that even if the language of § 544, when viewed in isolation, suggests that avoidance must be all or nothing, § 550—the recovery statute—creates an ambiguity in § 544. Section 550(a) provides, with certain exceptions not relevant here, that "to the extent that a transfer is avoided under section 544 . . . , the trustee may recover, *for the benefit of the estate*, the property transferred . . . ." 11 U.S.C.A. § 550(a) (West 2004) (emphasis added). Based on the emphasized language, the Bank contends that, like property recovery, transfer avoidance could be limited to the extent necessary to benefit the creditors and pay the administrative expenses of the estate.

We do not accept this assertion. In the absence of equivalent language in § 544, the presence of the phrase "for the benefit of the estate" in § 550 merely highlights the fact that Congress knew how to include such a limitation when it wanted to. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks & alterations omitted)).

The Bank nevertheless maintains that the § 550 language creates an ambiguity with regard to § 544 because the concepts of avoidance and recovery are intertwined. We agree that the concepts are intertwined to the extent that property cannot be recovered under § 550 until an action is brought to avoid the transfer of that property. *See Glanz v. RJF Int'l Corp. (In re Glanz)*, 205 B.R. 750, 757 (Bankr. D. Md. 1997). But the opposite is certainly not true, as the case before us demonstrates. Once Debtor avoided the deeds of trust, no recovery was necessary; the avoidance itself was the meaningful event.[5] *See id.* at 758. Thus, the recovery statute has no application here.

---

[5]It is this factor that distinguishes *Wellman v. Wellman*, 933 F.2d 215 (4th Cir. 1991), on which the bankruptcy court relied. There, a debtor-in-possession initiated an action to set aside a stock sale under 11 U.S.C.A.

The Bank contends that even if applying the plain language of § 544 would allow Debtor to avoid the deeds of trust entirely, the bankruptcy court was free to "use its equitable powers to limit the avoidance and effectuate the Code's underlying goal of protecting the estate's assets for the benefit of creditors, thus preventing a 'windfall' for the debtor." Br. of Appellee/Cross-Appellant at 50. We disagree.

The Bankruptcy Code bestows certain equitable powers on bankruptcy courts by providing that they "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code. 11 U.S.C.A. § 105(a) (West 2004); *see United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990). However, the Supreme Court has made clear that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). Thus, the equitable powers that a bankruptcy court possesses "are not a license . . . to disregard the clear language and meaning of the bankruptcy statutes and rules." *Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987); *see 2 Collier on Bankruptcy* ¶ 105.01[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005) ("Section 105 does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code . . . .").

Under the facts found by the bankruptcy court, the plain language of § 544 provides that Debtor "may avoid" the deeds of trust. To "avoid," in a legal context, means "[t]o render void." *Black's Law*

---

§ 548, which allows a trustee to "avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor" under certain specified circumstances, 11 U.S.C.A. § 548(a)(1) (West 2004). *See Wellman*, 933 F.2d at 217. Even though § 548 is similar to § 544 in that it contains no "for the benefit of the estate" language, we held that the debtor-in-possession lacked standing to set aside the sale because the action was not being prosecuted for the benefit of the estate. *See id.* at 217-19. Critically, though, our decision in *Wellman* that the debtor lacked standing was based largely on the fact that any *recovery* of the stock under § 550 would not benefit the estate. *See id.* at 218. Since avoidance is the meaningful event in the case at bar, § 550 has no application here.

*Dictionary* 146 (8th ed. 2004); *see Webster's Encyclopedic Unabridged Dictionary of the English Language* 143-44 (2001) (defining "avoid" in a legal context to mean "to make void or of no effect; invalidate"). The ruling of the bankruptcy court that the deeds of trust remain in effect as between Debtor and the Bank clearly infringes Debtor's right, unambiguously conferred by the Code, to nullify the grant of the deeds. We therefore hold that the bankruptcy court erred in limiting Debtor's ability to avoid the deeds of trust.[6]

### III.

Debtor also contends that the bankruptcy court erred in withdrawing its order confirming her Chapter 11 plan on the Bank's motion for reconsideration. We agree.

In its order on reconsideration, the bankruptcy court explained that its confirmation of Debtor's Chapter 11 plan had been based on its view that avoidance of the deeds of trust would have to be all or nothing. *See Coleman*, 286 B.R. at 309. The court explained, however, that it later ruled that the Bank's security interest could be partially avoided so that creditors and administrative expenses could be paid but the Bank would otherwise retain its interest:

> The Debtor's Plan as confirmed by this Court left the Debtor, in the event of a successful challenge to the Bank's deeds of trust in the adversary proceeding, free to continue

---

[6]We note additionally that the Bank's contention that limiting Debtor's ability to avoid the deeds of trust is necessary to protect the estate assets for the benefit of creditors is suspect in light of the fact that for Debtor to be left with any proceeds from the sale of the homes, all of the creditors' claims would first have to be paid. Moreover, it is hard to see how the Bank is in a position to request equitable relief from the effects of the § 544 avoidance of the deeds when the Bank's agent's knowledge of the impropriety of the grant of the deeds was the basis for avoidance in the first place. *See Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244 (1933) ("It is one of the fundamental principles upon which equity jurisprudence is founded, that before a complainant can have a standing in court he must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands." (internal quotation marks omitted)).

her efforts to gain innocent spouse relief from the IRS with regard to its claim and subject to an obligation to sell the properties subject to the deeds of trust only if necessary to pay the IRS and her other creditors. *Such a result is directly at odds with this Court's decision rendered contemporaneously with this one in the adversary proceeding upholding the Bank's rights in the deeds of trust as to Mrs. Coleman but subordinating them to the rights of her creditors.* Accordingly, such Plan ought not to have been confirmed.

*Id.* at 309-10 (emphasis added).

Because we conclude that the bankruptcy court was correct in its original view that avoidance of the deeds of trust must be all or nothing, we hold that the reconsideration by the court of its earlier confirmation of the plan was unwarranted.

IV.

On cross-appeal, the Bank maintains that the bankruptcy court erred in denying its motion to dismiss Debtor's Chapter 11 petition for lack of good faith. We disagree.

In *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989), we held that a Chapter 11 petition may be dismissed for lack of good faith on the part of the petitioner, but to warrant dismissal, "*both* objective futility [of the bankruptcy filing] and subjective bad faith [must] be shown." *Carolin*, 886 F.2d at 700-01 (emphasis in original). We reasoned that "[s]uch a test . . . contemplates that it is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation." *Id.* at 701. We also explained that requiring objective futility as well as subjective bad faith "is necessary to accommodate the various and conflicting interests of debtors, creditors, and the courts that are at stake in deciding whether to deny threshold access to Chapter 11 proceedings for want of good faith in filing." *Id.* In sum, we noted that "[t]he overall aim of the twin-pronged inquiry must . . . be to determine whether

the purposes of the Code would be furthered by permitting the Chapter 11 petitioner to proceed past filing." *Id.*

*Carolin* concerned a reorganization of a going concern, not a liquidation of an individual's assets, but our reasoning in *Carolin* is no less applicable in the liquidation context. Thus, to warrant dismissal of Debtor's petition, the Bank was required to show the objective futility of the petition as well as Debtor's subjective bad faith.

The Bank asserts that even if it must show that Debtor's petition was objectively futile to warrant dismissal for lack of good faith, it necessarily showed objective futility since Debtor has no ongoing concern to reorganize. We disagree. In making this argument, the Bank relies on language in *Carolin* stating that a petition with no chance of bringing about a successful reorganization is objectively futile. We explained in *Carolin* that "[t]he objective futility inquiry is designed to insure that there is embodied in the petition some relation to the statutory objective of resuscitating a financially troubled debtor." *Id.* (internal quotation marks & alteration omitted). That *Carolin* stated the objective futility test in terms of the chances of rehabilitating a going concern is hardly surprising, since *Carolin* involved a reorganization. However, since *Carolin*, the Supreme Court has held that individual debtors with no ongoing business concern also may invoke Chapter 11. *See Toibb v. Radloff*, 501 U.S. 157, 166 (1991). Thus, in judging the objective futility of a Chapter 11 petition in a liquidation context, courts must decide whether the petition represents an objectively futile attempt to achieve the more general goal of "resuscitating a financially troubled debtor." *Carolin*, 886 F.2d at 701 (internal quotation marks & alteration omitted).

The Bank clearly failed to demonstrate objective futility under that standard, and it certainly did not demonstrate that the bankruptcy court clearly erred in ruling that objective futility was not established. *See id.* at 702 ("We review the bankruptcy court's ultimate finding that the filing was not in good faith as one of fact subject to the clearly erroneous standard."). Debtor's Chapter 11 filing afforded her the opportunity to avoid the Bank's security interest and pay her creditors. Regardless of whether Debtor's subjective motivation was consistent with the purposes of the Bankruptcy Code, the bankruptcy court had reason to conclude that her petition could serve those pur-

poses. We therefore conclude that the bankruptcy court properly denied the Bank's motion to dismiss.

## V.

The Bank next argues that the bankruptcy court erred in not barring Debtor under the doctrine of judicial estoppel from challenging the tax liability that is the basis for her attempt to avoid the deeds of trust. We disagree.

Judicial estoppel is an equitable doctrine designed to prevent litigants from "playing fast and loose" with the court. *FDIC v. Jones*, 846 F.2d 221, 234 (4th Cir. 1988) (internal quotation marks omitted). The doctrine estops a party in a legal proceeding from asserting a position that is inconsistent with another asserted position when the inconsistency would allow the party to benefit from deliberate manipulation of the court. *See id.*

Here, the Bank contends that Debtor asserted inconsistent positions by maintaining that she is liable to the IRS for back taxes but continuing to challenge that liability.[7] There is nothing improper about Debtor asserting both positions in the context of this case, however. The two positions merely reflect the reality that although Debtor maintained that she should not be liable to the IRS, she had not been successful in overturning her liability. She therefore faced the prospect of having to pay the taxes even as she attempted to challenge that obligation. Debtor's dual positions also reflect her dual roles in this action. On the one hand, she is a debtor in possession fulfilling her fiduciary duty to her creditors (including the IRS) by asserting their rights to avoid the Bank's security interest in her land. On the other hand, she is a taxpayer pursuing her own right to challenge the IRS's decision concerning her tax liability.

## VI.

The Bank finally contends that the bankruptcy court erred in setting

---

[7]Debtor now has exhausted all avenues available for challenging her tax liability.

aside the deeds of trust with respect to the interest of Mr. Coleman. We disagree.

The Bank maintains that the doctrine of collateral estoppel, also known as issue preclusion, should have precluded the bankruptcy court from setting aside the deeds of trust with respect to Mr. Coleman's interest. *See First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters.)*, 81 F.3d 1310, 1315 (4th Cir. 1996) (explaining that collateral estoppel applies in bankruptcy proceedings). To bar Debtor from litigating the issue of whether the deeds of trust could be set aside entirely, the Bank had to establish that (1) the issue to be precluded is identical to the issue already litigated, (2) the issue was actually determined in the prior proceeding, (3) the determination of the issue was an essential part of the decision in the prior proceeding, (4) the prior judgment was final and valid, and (5) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue. *See Sedlack v. Braswell Servs. Group*, 134 F.3d 219, 224 (4th Cir. 1998).

The Bank's collateral estoppel argument arises out of the fact that Mr. Coleman, like his wife, filed a personal Chapter 11 bankruptcy petition in which he initiated an adversary proceeding seeking to set aside the deeds of trust pursuant to Virginia and Tennessee fraudulent conveyance law. His adversary proceeding was dismissed with prejudice because it was filed beyond the applicable two-year statute of limitations.

The Bank identifies no issues of fact or law that were actually determined in Mr. Coleman's action and reappear in the current action. While Mr. Coleman's *claims* may have been similar to those in this action, they were dismissed with prejudice because of his failure to file within the applicable statute of limitations. Because no statute of limitations questions are at issue here, collateral estoppel does not apply.[8]

---

[8]The Bank also suggests that—collateral estoppel aside—a debtor in possession lacks the statutory authority to avoid the grant of a security interest in properties held by a debtor and another person as tenants by the entirety. In its initial brief, the Bank twice alludes to this proposition,

## VII.

In sum, we reverse the district court order to the extent that it affirms (1) the bankruptcy court ruling that Debtor's avoidance of the deeds of trust is only partially effective and (2) withdrawal by the bankruptcy court of its earlier confirmation of Debtor's plan. Otherwise, we affirm. We thus remand to the district court for further remand to the bankruptcy court for additional proceedings.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*

---

each time in a single sentence with no argument in favor of the position. Because the brief contains no argument supporting this claim, we do not consider it. *See* Fed. R. App. P. 28(a)(9)(A) (providing that the appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *11126 Baltimore Blvd., Inc. v. Prince George's County*, 58 F.3d 988, 993 n.7 (4th Cir. 1995) (en banc) (declining to consider arguments for failure to comply with Rule 28).